## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DANIEL D. WINE,
    *Plaintiff,*

    v.

CAROL CHAPDELAINE, ET AL.,
    *Defendants.*

No. 3:18-cv-704 (VAB)

## INITIAL REVIEW ORDER ON SECOND AMENDED COMPLAINT AND RULING ON MOTIONS FOR INJUNCTIVE RELIEF

Daniel D. Wine ("Plaintiff"), currently incarcerated at the MacDougall-Walker Correctional Institution ("MacDougall"), has sued Warden Carol Chapdelaine,[1] Lieutenants Drolet and Diaz, Captain Black, and Commissioner Scott Semple.

Mr. Wine filed his initial Complaint on April 24, 2018. Compl., ECF No. 1 (Apr. 24, 2018). On June 7, 2018, he filed an Amended Complaint adding Commissioner Semple as a Defendant. Am. Compl., ECF No. 13 (June 7, 2018). On May 8, 2019, Mr. Wine filed a Second Amended Complaint against the same Defendants. Second Am. Compl., ECF No. 20 (May 8, 2019).

Mr. Wine alleges that Defendants failed to protect him from an assault by another inmate on June 10, 2015, in violation of his rights under the Eighth Amendment of the United States Constitution. *Id.* He also alleges First and Fourteenth Amendment claims against Defendants. *Id.*

---

[1] Mr. Wine spells Warden Carol Chapdelaine's name as Champdelaine in the Complaint and Amended Complaints. *See* Compl. at 1; Am. Compl. at 1; Second Am. Compl. at 1. It is clear from a letter from Warden Chapdelaine that it attached as an exhibit to the Complaint that her last name is spelled Chapdelaine. *See* Compl., Ex. C-3, ECF No. 1-2, at 56 (parenthetical describing what the exhibit is). The Court therefore directs the Clerk to revise the docket to reflect that the correct spelling of Defendant Champdelaine's last name: Chapdelaine.

Mr. Wine has also filed two motions seeking preliminary injunctive relief. First Mot. for Prelim. Inj. ("First Mot. for P.I."), ECF No. 21 (Sep. 3, 2019); Second Mot. for Prelim. Inj. ("Second Mot. for P.I."), ECF No. 22 (Jan. 2, 2020).

For the following reasons, Mr. Wine's Second Amended Complaint is **DISMISSED** in part, and his motions for injunctive relief are **DENIED**.

The following claims are dismissed: the First and Fourteenth Amendment claims against Lieutenants Drolet and Diaz, Captain Black, and Warden Chapdelaine related to the alleged refusal of Lieutenants Drolet and Diaz and Captain Black to permit Mr. Wine to report the assault to the Connecticut State Police; the First and Fourteenth Amendment due process claims against Lieutenants Drolet and Diaz, Captain Black, and Warden Chapdelaine related to the failure of Lieutenants Drolet and Diaz and Captain Black to file criminal charges or facilitate the filing of criminal charges against Mr. Krawczynski; the Eighth Amendment failure to protect claims against all Defendants; and the Fourteenth Amendment failure to protect claims against Commissioner Semple and Warden Chapdelaine.

The following claim remains: the Fourteenth Amendment failure to protect claim will proceed against Lieutenant Drolet, Lieutenant Diaz, and Captain Black in their individual capacities.

## I.      FACTUAL ALLEGATIONS[2]

In June 2015, Mr. Wine had been assigned to MacDougall. Second Am. Compl. at 2.

---

[2] All factual allegations are drawn from the Second Amended Complaint and the exhibits attached to the original Complaint, which are referenced in the Second Amended Complaint. *See* Second Am. Compl., ECF No. 20 (May 8, 2019); Compl., ECF No. 1 (Apr. 24, 2018); Exs. A-1 through D, ECF No. 12 (Apr. 24, 2018), Am. Compl., ECF No. 34-1 (Mar. 14, 2019). *See also Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal citation and quotation marks omitted)).

At some point before June 4, 2015, several other inmates at MacDougall, who were allegedly known or suspected members of the Aryan Brotherhood Gang, including Robert Krawczynski, allegedly made direct threats to harm or physically injure Mr. Wine. *Id.* at 3.

On June 4, 2015, Officer Pennel allegedly instructed Mr. Wine to speak to Lieutenants Drolet and Diaz regarding these allegedly serious and credible threats to his physical safety. *Id.* Later that day, Mr. Wine allegedly pleaded with Lieutenants Drolet and Diaz to implement measures to protect him from harm, but they allegedly took no action and advised him to return to his housing unit. *Id.* at 3–4. Mr. Wine then allegedly spoke to Captain Black and informed him that he feared that inmates who were members of the Aryan Brotherhood Prison Gang, including Mr. Krawczynski, would assault him. *Id.* at 4. Captain Black allegedly suggested that Mr. Wine "try to duck" if these inmates attempted to assault him. *Id.*

On June 10, 2015, Mr. Krawczynski allegedly viciously assaulted Mr. Wine. *Id.* The assault allegedly rendered Mr. Wine "unconscious, bloody, and lifeless." *Id.* Prison officials allegedly transported Mr. Wine to an outside hospital, where a surgeon allegedly treated him for a broken jaw and a stab wound to his lower lip. *Id.* Mr. Wine allegedly remained in the hospital for an extended period. *Id.* On June 14, 2015, Mr. Wine allegedly was confined to the hospital unit at MacDougall. Ex. A-1, ECF No. 1-2 at 2 (Conn. Dep't of Corr. Inmate Request Form (June 14, 2015)).

Mr. Wine allegedly made requests to contact the Connecticut State Police Department to report the assault "in an effort to have the assailant criminally prosecuted;" but correctional officials, including Captain Black and Lieutenants Drolet and Diaz, allegedly denied his requests. Second Am. Compl. at 5–6. Mr. Wine then allegedly made requests to contact his criminal attorney to inform him about the assault, but correctional staff members allegedly

repeatedly informed Mr. Wine that they could not confirm his attorney's telephone number. *Id.* at 5; Exs. A-1 to A-7, ECF No. 1-2 at 1–14 (Conn. Dep't of Corr. Inmate Request Forms (June 14, 2015, through July 1, 2015)).

Mr. Wine also allegedly could not contact his family by telephone because the Department of Correction ("DOC") "shut off his pin number" and allegedly could not contact his family by mail because prison officials would not provide him with envelopes. Second Am. Compl. at 5. Mr. Wine allegedly remained in the segregation unit at MacDougall for thirty-three days. *Id.*

## II.    STANDARD OF REVIEW

### A. Initial Review

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P.

8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

**B. Preliminary Injunctive Relief**

Preliminary injunctive relief "is an extraordinary and drastic remedy, [ ] that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v.*

*Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal citation and quotation marks omitted). To warrant preliminary injunctive relief, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks omitted).

If a party seeks a permanent injunction, he or she "must demonstrate (1) irreparable harm . . . and (2) actual success on the merits." *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012). Thus, the standard for a permanent injunction is similar to the standard for a preliminary injunction, but a plaintiff must show actual success rather than a likelihood of success. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

## III.     DISCUSSION

### A. Initial Review Order—Second Amended Complaint

Mr. Wine contends that Lieutenants Drolet and Diaz, and Captain Black failed to protect him from harm in violation of his Eighth Amendment rights and refused to permit him to report the assault by Mr. Krawczynski to the Connecticut State Police in violation of his First and Fourteenth Amendment rights. Second Am. Compl. at 4–7. Mr. Wine claims that Commissioner Semple and Warden Chapdelaine failed to train and supervise the other Defendants in violation of the Eighth and Fourteenth Amendments. *Id.* at 6–7. Mr. Wine seeks punitive, compensatory, and special damages. *Id.* at 8–9.

1.     **Official Capacity Claims—Eleventh Amendment**

To the extent that Mr. Wine seeks punitive, compensatory, and special damages from Defendants in their official capacities, this relief is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

Accordingly, the claims for money damages against the Defendants in their official capacities will be dismissed.

2.     **Fourteenth and First Amendment Claims—Alleged Refusal to Permit Report of Assault and Failure to Pursue Criminal Charges**

Mr. Wine alleges that, at some point after being assaulted by Mr. Krawczynski, he made requests to contact the Connecticut State Police to report the assault for the purpose of having Mr. Krawczynski prosecuted for his alleged criminal act. Second Am. Compl. at 5. Mr. Wine contends that Lieutenants Drolet and Diaz, Captain Black, and other staff members refused to permit him to contact the Connecticut State Police immediately after the alleged assault occurred and refused to pursue criminal charges against Mr. Krawczynski, in violation of his First and Fourteenth Amendment rights. *Id.* at 6, 8.

a.  **Claims Based on Defendants' Alleged Refusal to Permit Report of Assault**

"[P]ersons in prison, like other individuals, have the right to petition the Government for redress of grievances . . . ." *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (internal citations omitted). The rights "to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (internal citations omitted). Furthermore, "it is axiomatic that filing a criminal complaint

with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances." *Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004) (internal quotation marks and citations omitted).

In exhibits referenced in the Second Amended Complaint and attached to the Complaint, Mr. Wine concedes that he met with his attorney on June 26, 2015, and that as of July 1, 2015, his attorney had reported the assault to the Connecticut State Police and that he and his attorney were pursuing charges against Mr. Krawczynski. Ex. B-5, ECF No. 1-2 at 26–27 (Conn. Dep't of Corr. Inmate Admin. Remedy Form (July 1, 2015)); Ex. C-4, ECF No. 1-2 at 43–45 (Letter from Daniel Wine to Scott Semple (Aug. 30, 2015)).

On August 12, 2015, Deputy Warden of Operations Hines sent information to Troop H of the Connecticut State Police Department and to Mr. Wine, regarding the June 10, 2015 assault, to enable Mr. Wine to pursue a criminal or civil action. Ex. C-2, ECF No. 1-2 at 37 (Letter from Gerald Hines to Daniel Wine (Aug. 12, 2015)). Mr. Wine also met with a Connecticut State Police Trooper on August 14, 2015, and August 18, 2015, who took Mr. Wine's statement regarding the assault during the second meeting. Ex. C-4, ECF No. 1-2 at 44 (Letter from Daniel Wine to Scott Semple (Aug. 30, 2015)); Ex. D, ECF No. 1-2 at 49 (Conn. Dep't of Public Safety, Div. of State Police, Witness Statement (Aug. 18, 2015)).

On September 11, 2015, Mr. Wine sent Warden Chapdelaine a letter stating that DOC had failed to notify the Connecticut State Police Department about the assault, but conceding that individuals who were not employed by the DOC, had reported the assault to the proper authorities. Ex. C-3, ECF No. 1-2 at 39 (Letter from Daniel Wine to Carol Chapdelaine (Sept. 11, 2015)).

In light of these exhibits, the Second Amended Complaint fails to plausibly allege that Lieutenants Drolet and Diaz and Captain Black would not permit him to contact the Connecticut State Police immediately after the assault had occurred and/or would not pursue criminal charges against Mr. Krawczynski in violation of Mr. Wine's constitutional rights. *See Conquistador v. Hartford Police Dep't*, No. 3:15-cv-1618 (MPS), 2017 WL 959731, at *4 (D. Conn. Mar. 13, 2017) (dismissing claim that police department would not accept or file plaintiff's criminal complaint about the theft of his vehicle because "[p]laintiff [had] not allege[d] that he was denied an opportunity to file a criminal complaint" given that officers directed him to "come to the police station to provide more information about [his] report" regarding his stolen vehicle); *Flores v. Lantz*, No. 3:05-cv-1288 (RNC), 2008 WL 4453421, at *6 (D. Conn. Sept. 30, 2008) (claim by pretrial detainee that correctional officers "denied hi[m] his right to report criminal assault to a law enforcement agency" did not state a "cause of action for a deprivation of a federally protected right" in light of fact that plaintiff had "contacted the Connecticut State Police through his sister on May 13, 2005, four days after the assault" and a State "Trooper . . . [had] visited plaintiff on May 31 and [had] investigated his complaint" (internal citation omitted)).

Accordingly, any claims based on the alleged refusal of Lieutenants Drolet and Diaz and Captain Black to permit Mr. Wine to report the assault to the Connecticut State Police will be dismissed.

### b.   Claims Based on Defendants' Alleged Refusal to Pursue Criminal Charges

The Constitution does not entitle a victim of allegedly criminal conduct to a criminal investigation or the prosecution of the alleged perpetrator of the crime. *See Leeke v. Timmerman*, 454 U.S. 83, (1981) (inmates alleging beating by prison guards lack standing to challenge prison

officials' request to magistrate not to issue arrest warrants); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *McCrary v. Cty. of Nassau*, 493 F. Supp. 2d 581, 588 (E.D.N.Y. 2007) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person.").

Moreover, an individual has no constitutionally protected right to a proper investigation by government officials. *See McCaffrey v. City of N.Y.*, No. 11 Civ. 1636 (RJS), 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[A] 'failure to investigate' is not independently cognizable as a stand-alone claim."); *Grega v. Pettengill*, 123 F. Supp. 3d 517, 536–37 (D. Vt. 2015) ("[D]istrict courts in this circuit have consistently declined to recognize a claim of 'failure to investigate' as a violation of due process giving rise to a damages action.") (collecting cases); *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 316-17 (W.D.N.Y. 2004) ("There is . . . no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted)); *Santossio v. City of Bridgeport*, No. 3:01-cv-1460 (RNC), 2004 WL 2381559, at *4 (D. Conn. Sept. 28, 2004) ("[T]he United States Constitution does not grant plaintiffs a right to an adequate investigation or adequate after-the-fact punishment.") (collecting cases).

Accordingly, any claims based on the allegations that Lieutenants Drolet and Diaz and Captain Black refused to contact the Connecticut State Police in order to pursue or facilitate the filing of criminal charges against Mr. Krawczynski in violation of Mr. Wine's rights under either the First or Fourteenth Amendments will be dismissed.

### 3.    Eighth Amendment Claim—Failure to Protect

Mr. Wine asserts that on June 10, 2015, the date on which Mr. Krawczynski allegedly assaulted him, he "was a sentenced inmate." Second Am. Compl. at 2. DOC records reflect,

however, that Mr. Wine was not convicted until October 21, 2015.[3] Thus, Mr. Wine was a pretrial detainee at the time of the alleged assault.

Consequently, any claim related to Mr. Wine's exposure to unconstitutional conditions of confinement, including deliberate indifference to his safety, during the time that he was a pretrial detainee would arise under the Fourteenth and not the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because[] [p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." (internal citation and quotation marks omitted)); *Barnes v. Harling*, No. 6:10-cv-06164 (EAW), 2019 WL 1319479, at *12 (W.D.N.Y. Mar. 19, 2019) ("Under current Second Circuit law, when a pretrial detainee plaintiff brings § 1983 claims alleging deliberate indifference, including claims alleging failure to protect or intervene," a district court analyzes these claims under the Fourteenth Amendment using the standard set forth in *Darnell*, 849 F.3d at 30, 35 (citations omitted)).

Accordingly, Mr. Wine's Eighth Amendment failure to protect claim will be dismissed.

Construing his allegations "to raise the strongest arguments that they suggest," *Sykes*, 723 F.3d at 403, however, the Court will consider whether Mr. Wine adequately has alleged a failure to protect claim under the Fourteenth Amendment.

---

[3] The State of Connecticut's Judicial Branch website indicates that a jury convicted Mr. Wine of multiple offenses on October 21, 2015, and that, on January 8, 2016, a judge sentenced him to multiple years of imprisonment, followed by at least ten years of special parole. *See* https://www.jud.ct.gov/crim.htm (follow "Convictions – by Docket Number" hyperlink; then enter Docket No. TTD-CR14-0104934-T). The State of Connecticut DOC's website also indicates Mr. Wine's confinement within the DOC on March 6, 2014, and that, on January 8, 2016, a judge sentenced him to twenty-nine years of imprisonment. *See* http://portal.ct.gov/DOC (follow "Inmate Information Search" hyperlink; then enter Mr. Wine's CT DOC Inmate Number 402025).

4.      **Fourteenth Amendment Claims—Failure to Protect**

a.      **Lieutenants Drolet and Diaz and Captain Black**

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional

conditions of confinement by showing that the officers acted with deliberate indifference to the

challenged conditions." *Darnell*, 849 F.3d at 29. A pretrial detainee plaintiff must meet both an

objective and a subjective standard to state a deliberate indifference claim under the Fourteenth

Amendment based on conditions of confinement. *Id.*

Under the objective prong, a detainee must allege that "the conditions, either alone or in

combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the

risk of serious damage to physical and mental soundness." *Id.* at 30 (internal citations and

quotation marks omitted). An unreasonable risk of serious damage to a pretrial detainee's health

includes the risk of serious damage to "physical and mental soundness." *Id.* Although "[t]here is

no 'static test' to determine whether a deprivation is sufficiently serious . . . 'the conditions

themselves must be evaluated in light of contemporary standards of decency.'" *Id.* For example,

"prisoners may not be deprived of their basic human needs—*e.g.*, food, clothing, shelter, medical

care, and reasonable safety—and they may not be exposed to conditions that pose an

unreasonable risk of serious damage to [their] future health." *Id.* (internal quotation marks

omitted); *see also Ramos v. Town of E. Hartford*, No. 3:16-cv-166 (VLB), 2019 WL 2785594, at

*12 (D. Conn. July 2, 2019) (evidence of denial of prompt medical care and delay was

sufficiently serious to create genuine issue of material fact where prison officials tased detainee

in the chest area for extended period of time, punched him in the head, struck his head against a

cement wall, and then failed to conduct medical assessment and perform CPR after confirming

detainee had no pulse), *appeal withdrawn sub nom. Ramos v. Lis*, No. 19-2197, 2020 WL

255878 (2d Cir. Jan. 7, 2020), *and appeal withdrawn*, No. 19-3541, 2020 WL 1987818 (2d Cir.

Mar. 3, 2020); *Blake v. Kelly*, No. 12 CIV. 7245 ER, 2014 WL 4230889, at *6 (S.D.N.Y. Aug.

26, 2014) (pretrial detainee plausibly alleged serious injury by alleging that prison official

arrived at assault, stood outside cell and ordered inmates to stop, and left to get help when assault

continued but did not come back with assistance for about five minutes).

To meet the second prong of a Fourteenth Amendment conditions of confinement claim,

a detainee must allege that the prison official "acted intentionally to impose the alleged

condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition

posed to [him or her] even though the [prison]-official knew, or should have known, that the

condition posed an excessive risk to health or safety." *Id.* at 35. Thus, the subjective prong may

be met even where an official is not actually aware that his or her acts or omissions have created

a condition that poses a substantial risk of harm to a detainee. *Id.*

Mr. Wine has alleged that Lieutenants Drolet and Diaz and Captain Black subjected him

to a risk of serious injury by permitting him to remain housed with inmates who had threatened

to physically harm him. Second Am. Compl. at 3–4, 7. These allegations meet the first, objective

prong of the Fourteenth Amendment failure to protect claim.

In addition, Mr. Wine has alleged that Lieutenants Drolet and Diaz and Captain Black

recklessly failed to act with reasonable care by leaving Mr. Wine in a housing unit with inmates

who had threatened physical violence towards him because they knew or should have known that

Mr. Krawczynski and other members of Aryan Brotherhood gang posed an excessive risk to his

health or safety. *Id.* at 3; *see also Perez v. Ponte*, 236 F. Supp. 3d 590, 626–27 (E.D.N.Y. 2017),

*report and recommendation adopted*, No. 16-cv-645 (JFB) (AKT), 2017 WL 1050109 (E.D.N.Y.

Mar. 15, 2017) (pretrial detainee stated plausible failure-to-protect claim against correctional

officers under Fourteenth Amendment by alleging that unidentified inmate approached him from behind and slashed his face from his ear down to his chin, requiring surgery and causing permanent nerve damage and headaches, and that officers directly observed the attack, did nothing to intervene, and had enough time to flee to their office in the recreation yard); *Heisler v. Kralik*, 981 F. Supp. 830, 834, 837 (S.D.N.Y. 1997), *aff'd sub nom. Heisler v. Rockland Cty.*, 164 F.3d 618 (2d Cir. 1998) (issues of material fact precluded summary judgment where pretrial detainee produced evidence that sheriff knew detainee had been charged with sexual assault of a minor and had requested to be placed in protective custody given likelihood that other inmates would threaten him with violence based on the type of charge but failed to do so until after detainee was assaulted by another inmate).

Accordingly, Mr. Wine has stated a plausible claim under the Fourteenth Amendment that Lieutenants Drolet and Diaz and Captain Black failed to protect him from assault by Mr. Krawczynski.

### b.   Commissioner Semple and Warden Chapdelaine

It is well established that a plaintiff is not entitled to an award of damages unless he or she asserts facts to demonstrate the "'personal involvement of [the] defendants in the alleged constitutional deprivations.'" *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). A supervisor thus cannot be held liable under Section 1983 under a theory of *respondeat superior*. *See Hayut v. State Univ. of N. Y.*, 352 F.3d 733, 753 (2d Cir. 2003) ("It is well settled, however, that the doctrine of *respondeat superior* standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity.")

A plaintiff may demonstrate the personal involvement of a supervisory defendant in the following ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[4]

Mr. Wine does not allege that either Commissioner Semple or Warden Chapdelaine was directly involved in or aware of the incident involving the assault by Inmate Krawczynski. Rather, he asserts that Commissioner Semple was involved because he failed to properly train and supervise Warden Chapdelaine, and that Warden Chapdelaine was involved because she failed to properly train and supervise Lieutenants Drolet and Diaz and Captain Black.

### i.   Commissioner Semple

Mr. Wine contends that Commissioner Semple "failed to properly train [and] supervise Warden Chapdelaine, who in turn failed to properly train [and] supervise, and otherwise ensure that Defendants Black, Drolet and Diaz were fit to competently perform their duties as administrative supervisors at MacDougall." Second Am. Compl. at 6. Mr. Wine does not include

---

[4] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Shaw v. Prindle*, 661 F. App'x 16, 18 n.2 (2d Cir. 2016) ("'Although the Supreme Court's decision in . . . *Iqbal* . . . , may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case, for [Shaw's] [amended] complaint did not adequately plead [Larkin's or Russo's] personal involvement even under *Colon*.'" (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013))); *see also Rispardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*." (internal citation and quotation marks omitted)). For purposes of this decision, it is assumed that the categories outlined in *Colon* remain valid.

any other facts to support this conclusory assertion that Commissioner Semple failed to supervise and train.

Nor has Mr. Wine alleged any facts demonstrating the personal involvement of Commissioner Semple in the alleged failure of Lieutenants Drolet and Diaz and Captain Black to protect him from harm under the fourth category of *Colon*. *See Colon*, 58 F.3d at 873 (personal involvement of a supervisory defendant may be plausibly alleged by showing that "(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts . . . ."). Moreover, Mr. Wine does allege any facts suggesting that Commissioner Semple was even aware of Lieutenants Drolet, Lieutenant Diaz, and Captain Black's conduct.[5]

As a result, Mr. Wine has not plausibly alleged the personal involvement of Commissioner Semple related to Lieutenant Drolet, Lieutenant Diaz, and Captain Black's alleged failure to protect him from assault under the second category of *Colon*. *See Colon*, 58 F.3d at 873 (personal involvement of a supervisory defendant may be plausibly alleged by showing that "(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong . . . .").

Similarly, Mr. Wine's conclusory allegation of supervisory liability based on a failure to train or supervise is insufficient to state a claim regarding Commissioner Semple's involvement in the alleged failure to protect him from harm by Lieutenants Drolet and Diaz and Captain Black. *See Twombly*, 550 U.S. at 555–57 (complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked

---

[5] A letter addressed to Commissioner Semple and dated August 30, 2015, refers to Mr. Krawczynski's alleged assault of Mr. Wine on June 10, 2015. Ex. C-4 at 43–45. The letter does not mention Lieutenant Drolet or Lieutenant Diaz or Captain Black, however, or include any allegations regarding their conduct in failing to take any action to protect him from the assault by Mr. Krawczynski. *Id.* Thus, the letter does not indicate whether Commissioner Semple was aware or should have been aware of the conduct of Lieutenants Drolet and Diaz and Captain Black, but recklessly failed to take any action to remedy the situation.

assertion[s]" devoid of "further factual enhancement"); *Styles v. Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) ("The mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983."); *Colon v. Annucci*, 344 F. Supp. 3d 612, 630 (S.D.N.Y. 2018) ("This conclusory statement, which merely parrots [the fourth and fifth] personal involvement categories verbatim is insufficient to plausibly allege personal involvement."); *Samuels v. Fischer*, 168 F. Supp. 3d 625, 636 (S.D.N.Y. 2016) ("Second Circuit law has long taught that, even within the context of the *Colon* framework, merely reciting the legal elements of a successful § 1983 claim for supervisory liability does not meet the plausibility pleading standard." (alterations and internal quotation marks omitted)).

Accordingly, Mr. Wine's Fourteenth Amendment failure to protect claim against Commissioner Semple will be dismissed.

### ii.    Warden Chapdelaine

Mr. Wine asserts that Warden Chapdelaine failed to properly train and supervise Lieutenants Drolet and Diaz and Captain Black. Second Am. Compl. at 6. He also contends that after the assault, Warden Chapdelaine together with Lieutenants Drolet and Diaz and Captain Black "took acts designed to cover-up and conceal the misconduct of Drolet, Black, and Diaz in failing to protect [him] as otherwise described within this complaint." *Id.* at 5.

Mr. Wine attempts to demonstrate the personal involvement of Warden Chapdelaine under the second and fourth categories of *Colon*. *See Colon*, 58 F.3d at 873 (personal involvement of a supervisory defendant may be plausibly alleged by showing that "(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong" or "(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts").

Mr. Wine alleges that, after the incident, Warden Chapdelaine became aware or should have been aware that Lieutenants Drolet and Diaz and Captain Black had failed to take action to protect Mr. Wine from the assault by Mr. Krawczynski and took no action to rectify the situation. Instead, she allegedly attempted to hide the misconduct of Lieutenants Drolet and Diaz and Captain Black.

But Mr. Wine does not allege any facts to support his conclusory assertions that Warden Chapdelaine knew or should have known of Lieutenants Drolet's and Diaz's and Captain Black's alleged failure to protect him from assault, or a lack of training or supervision on the part of Warden Chapdelaine.

Nor do the exhibits attached to the Complaint support Mr. Wine's contention that Warden Chapdelaine became aware or should have been aware of the conduct of Lieutenants Drolet and Diaz and Captain Black and recklessly failed to act in response to this information. Although Mr. Wine sent a letter to Warden Chapdelaine regarding the assault, which she received on September 11, 2015, the letter does not include any allegations regarding the failure of Lieutenant Drolet or Lieutenant Diaz or Captain Black to protect him from the assault. Ex. C-3 at 39.

Rather, the letter focuses on the prison staff at MacDougall not reporting the assault to the "proper authorities," Mr. Wine receiving an allegedly unjustified disciplinary ticket in connection with the assault, and prison officials, including District Administrator Quiros, not engaging in a competent investigation of the basis for the disciplinary report. *Id.* Mr. Wine also indicates in the letter that he would be filing a legal action regarding the matter. *Id.*

In response to the letter, Warden Chapdelaine referred Mr. Wine to District Administrator Quiros's letter denying Mr. Wine's appeal of the disciplinary finding. *Id.* at 39–40. Additionally,

18

although Mr. Wine sent a copy of his August 30, 2015 letter addressed to Commissioner Semple to Warden Chapdelaine, that letter did not mention Lieutenant Drolet, Lieutenant Diaz, or Captain Black or include any allegations regarding their conduct in failing to take any action to protect him from the assault by Inmate Krawczynski. Ex. C-4 at 43–45.

As a result, neither the allegations in the Second Amended Complaint nor the exhibits attached to the original Complaint support a plausible claim that Warden Chapdelaine failed to remedy the situation or the conduct of Lieutenants Drolet and Diaz and Captain Black after she became aware or should have become aware of their actions. Thus, Mr. Wine has not demonstrated the personal involvement of Warden Chapdelaine under the second category of *Colon*. *See Colon*, 58 F.3d at 873 (personal involvement of a supervisory defendant may be plausibly alleged by showing that "(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong").

Accordingly, the Court will dismiss Mr. Wine's Fourteenth Amendment failure to protect claim asserted against Warden Chapdelaine.

### B.    Motions for Injunctive Relief

Mr. Wine has filed two motions for injunctive relief. First Mot. for P.I.; Second Mot. for P.I. After the alleged assault by Mr. Krawczynski, Mr. Wine allegedly underwent surgery to repair his jaw and continues to suffer pain as a result: allegedly permanent nerve damage to his mouth, lips, jaw, and chin; pain in his gums; and swelling in his lower lip and chin. First Mot. for P.I. at 1. Following the assault, he had been prescribed Ibuprofen, but, in August 2019, this prescription had been discontinued. *Id.* He allegedly wrote to the medical department seeking a re-fill twice, but the medical provider did not renew the prescription. *Id.* In response to his second request, however, he allegedly was instructed to purchase Ibuprofen from the

commissary. *Id.* But Mr. Wine allegedly lacks sufficient funds in his inmate account to pay for items in the commissary. *Id.*

Mr. Wine's renewed motion for injunctive relief reiterates these allegations. Second Mot. for P.I. at 3–4. In both motions, Mr. Wine seeks an order directing medical providers at MacDougall to renew his prescription for Ibuprofen. *Id.* at 4; First Mot. for P.I. at 4.

But "a court generally may not issue an order against a nonparty." *Sumpter v. Skiff*, 260 F. App'x 350, 350–51 (2d Cir. 2008); *see also United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988) (summary order) (affirming district court denial of injunctive relief against an entity not named as a defendant).

The Second Amended Complaint does not name the medical providers Mr. Wine references in his motions for preliminary injunctions as defendants. Injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2) (providing that an order granting an injunction or restraining order binds only a nonparty who receives actual notice of the order and who is an "officer, agent, servant, employee, or attorney" of a party or "who [is] in active concert or participation with" a party or the officer, agent, servant, employee, or attorney of a party, to whom the injunction or restraining order applies); *Sumpter*, 260 F. App'x at 351 ("The district court did not exceed its allowable discretion in denying Sumpter's application for injunctive relief. . . . [because] [t]he New York State Division of Parole . . . to which Sumpter's motion was directed, was not named as a defendant in the underlying action and does not fall within any of the exceptions listed in Rule 65(d)."); *Abrams v. Waters*, No. 3:17-cv-1659 (CSH), 2018 WL 1469057, at *6–7 (D. Conn. Mar. 26, 2018) (court lacked personal jurisdiction to enter permanent injunction against warden of correctional facility who was not defendant, had no involvement in underlying claims, and did

not fit within limited group of individuals described in Fed. R. Civ. P. 65(d)(2) against whom injunctive relief may be ordered).

Moreover, the purpose of a preliminary injunction is to provide temporary relief pending resolution of a case on the merits, *Pierce v. Woldenberg*, 498 F. App'x 96, 98 (2d Cir. 2012) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 645 (2d Cir. 1998) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.")), not to provide relief unrelated to the merits of a case.

Mr. Wine's Second Amended Complaint does not allege any claims related to the provision of medical treatment, nor does it request injunctive relief at all. As his only remaining claim is a Fourteenth Amendment failure to protect claim, the relief requested in these motions— for an order directing medical providers to renew his prescription—is not related to the remaining claim in this action.

Accordingly, because Mr. Wine's motions for preliminary injunctive relief are unrelated to his remaining underlying claim, the Court will deny his motions for preliminary injunction. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (noting that a preliminary injunction is appropriate to grant intermediate relief of "the same character as that which relief may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside the issues in the suit."); *see also Doe v. Paychex, Inc.*, No. 3:17-cv 2031 (VAB), 2020 WL 219377, at *7 (D. Conn. Jan. 15, 2020) (denying plaintiff's motion for preliminary injunction where "[t]he sweeping relief [she] seeks is unconnected to" her claims); *Ramos v. Univ. of Conn. Health Ctr.*, No. 3:17-cv-326 (VAB), 2018 WL 2465356, at *7 (D. Conn. June 1, 2018) (denying request for injunctive relief seeking free copies of documents because request was unrelated to medical care claim asserted in amended complaint); *Johnson v.*

*Vijay-Kumar-Mandalay Wala*, No. 9:14-cv-1151 (LEK/DJS), 2016 WL 426547, at *2 (N.D.N.Y. Feb. 3, 2016) (denying motion for mandatory injunction because relief sought for medical treatment for sinus and skin problems was "unconnected, in time and substance" to inmate's underlying deliberate indifference to medical care claim regarding denial of vitamins); *Mitchell v. N.Y. State Dep't of Corr. Servs.*, No. 06-cv-6278 CJS, 2011 WL 5326054, at *3 (W.D.N.Y. Nov. 3, 2011) (finding that the facts underlying the request for injunctive relief were unrelated to the underlying facts of the claims in the action, except for the fact that they arose in the prison context).

### ORDERS

The Court enters the following orders:

**(1)**       The Court directs the Clerk to revise the docket to reflect that the correct spelling of Defendant Champdelaine's last name is Chapdelaine. The Motions for Injunctive Relief, [**ECF Nos. 21, 22**] are **DENIED**. Mr. Wine is not precluded from pursuing the relief requested in the motions in a separate action.

Based on the Court's review of the allegations in the Second Amended Complaint, [**ECF No. 20**], the claim for monetary damages against the Defendants in their official capacities is **DISMISSED** under 28 U.S.C. § 1915A(b)(2) and the following claims are **DISMISSED** under 28 U.S.C. § 1915A(b)(1): the First and Fourteenth Amendment claims against Lieutenants Drolet and Diaz, Captain Black, and Warden Chapdelaine related to the alleged refusal of Lieutenants Drolet and Diaz and Captain Black to permit Mr. Wine to report the assault to the Connecticut State Police; the First and Fourteenth Amendment due process claims against Lieutenants Drolet and Diaz, Captain Black, and Warden Chapdelaine related to the failure of Lieutenants Drolet and Diaz and Captain Black to file criminal charges or facilitate the filing of criminal charges

against Mr. Krawczynski; the Eighth Amendment failure to protect claims against all Defendants; and the Fourteenth Amendment failure to protect claims against Commissioner Semple and Warden Chapdelaine.

The Fourteenth Amendment failure to protect claim will proceed against Lieutenant Drolet, Lieutenant Diaz, and Captain Black in their individual capacities.

 (2)     **By July 31, 2020**, the Clerk shall verify the current work addresses of Lieutenant Drolet, Lieutenant Diaz, and Captain Black and mail a copy of the Second Amended Complaint, [**ECF No. 20**], this order, and a waiver of service of process request packet to each Defendant in his or her individual capacity at his or her confirmed address. **By August 7, 2020**, the Clerk shall report to the Court on the status of each request. If a Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on that Defendant, who shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants Lieutenants Drolet and Diaz and Captain Black shall file their response to the Second Amended Complaint, either an Answer or motion to dismiss, by **October 2, 2020**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

(4)     Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed **by January 15, 2021**. Discovery requests need not be filed with the Court.

(5)     All motions for summary judgment shall be filed **by February 26, 2021**.

(6)     The Clerk shall send a courtesy copy of the Second Amended Complaint and this Initial Review Order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

**(7)**     The parties must comply with the District of Connecticut "Standing Order Re:

Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can

be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

   **SO ORDERED** at Bridgeport, Connecticut this 19th day of July, 2020.

                              _____/S/_____
                              VICTOR A. BOLDEN
                              UNITED STATES DISTRICT JUDGE