## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL WINE,<br>  *Plaintiff*,<br><br>   v.<br><br>LIEUTENANT DROLET, LIEUTENANT<br>DIAZ, and CAPTAIN BLACK,<br>  *Defendants.* | No. 3:18-cv-00704(VAB) |

## RULING AND ORDER ON
## MOTION FOR SUMMARY JUDGMENT

Daniel D. Wine ("Mr. Wine" or "Plaintiff"), currently incarcerated at the MacDougall-Walker Correctional Institution ("MacDougall"), has filed a civil rights Complaint under 42 U.S.C. § 1983 against Lieutenant Drolet, Lieutenant Diaz, and Captain Black (together, "Defendants"). Compl., ECF No. 1 (April 24, 2018); Am. Compl., ECF No. 20 (May 08, 2019) ("Am. Compl.").

Mr. Wine alleges that Defendants failed to protect him from an assault by another inmate on June 10, 2015, in violation of his rights under the Eighth Amendment of the United States Constitution. *Id.* He also alleges First and Fourteenth Amendment claims against Defendants. *Id.*

On July 19, 2020, the Court dismissed Mr. Wine's Complaint in part. Initial Review Order, ECF No. 23 (July 19, 2020) ("Initial Review Order").

Mr. Wine's case was permitted to proceed on the Fourteenth Amendment failure to protect claim against Lieutenant Drolet, Lieutenant Diaz, and Captain Black in their individual capacities. *Id*. at 23.

Defendants now move for summary judgment on the remaining Fourteenth Amendment claim. Defs.' Mot. for Summ. J., ECF No. 67 (Apr. 08, 2022) ("Defs.' Mot. for Summ. J."); Mem. of Law in Supp. of Defs.' Mot. for Summ. J., ECF No. 67-4 (Apr. 08, 2022) ("Defs.' Mem. in Supp. of Mot. for Summ. J.").

For the following reasons, Defendants' motion for summary judgment is **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Background

#### 1.    Mr. Wine's Grievances[1]

Mr. Wine entered MacDougall-Walker Correction Institution as a pretrial detainee on June 30, 2014. Defs. Rule 56(d) Statement of Undisputed Mat. Facts ¶ 1 ("Defs. SMF").

At some point before June 10, 2015, several other inmates at MacDougall, who were allegedly known or suspected members of the Aryan Brotherhood Gang, including Robert

---

[1] The facts are taken from Mr. Wine's Amended Complaint, Defendants' Rule 56(d) Statement (Defendant filed Local Rule 56(d) Statement instead of Local Rule 56(a)(1) Statement), and supporting exhibits filed by all parties. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

Krawczynski, allegedly made direct threats to harm or physically injure Mr. Wine. Am. Compl at 3.

On June 4, 2015, Officer Pennel allegedly instructed Mr. Wine to speak to Lieutenants Drolet and Diaz regarding these allegedly serious and credible threats to his physical safety. *Id.* Later that day, Mr. Wine allegedly pleaded with Lieutenants Drolet and Diaz to implement measures to protect him from harm, but they allegedly took no action and advised him to return to his housing unit. *Id.* at 3–4. Mr. Wine then allegedly spoke to Captain Black and informed him that he feared that inmates who were members of the Aryan Brotherhood Prison Gang, including Mr. Krawczynski, would assault him. *Id.* at 4. Captain Black allegedly suggested that Mr. Wine "try to duck" if these inmates attempted to assault him. *Id.*

On June 10, 2015, Mr. Krawczynski allegedly viciously assaulted Mr. Wine. *Id.* The assault allegedly rendered Mr. Wine "unconscious, bloody, and lifeless." *Id.* Prison officials allegedly transported Mr. Wine to an outside hospital, where a surgeon allegedly treated him for a broken jaw and a stab wound to his lower lip. *Id.* Mr. Wine allegedly remained in the hospital for an extended period. *Id.* On June 14, 2015, Mr. Wine allegedly was confined to the hospital unit at MacDougall. *Id.;* Pl. Ex. A-1 at 2, ECF No. 1-2 (Conn. Dep't of Corr. Inmate Request Form (June 14, 2015)).

Mr. Wine allegedly made requests to contact the Connecticut State Police Department to report the assault "in an effort to have the assailant criminally prosecuted" but correctional officials, including Captain Black and Lieutenants Drolet and Diaz, allegedly denied his requests. *Id.* at 5–6.

3

Mr. Wine then allegedly made requests to contact his criminal attorney to inform him about the assault, but correctional staff members allegedly repeatedly informed Mr. Wine that they could not confirm his attorney's telephone number. *Id*. at 5; Pl. Exs. A-1 to A-7 at 1–14, ECF No. 1-2 (Conn. Dep't of Corr. Inmate Request Forms (June 14, 2015, through July 1, 2015)).

Mr. Wine also allegedly could not contact his family by telephone because the Department of Correction ("DOC") "shut off his pin number" and allegedly could not contact his family by mail because prison officials would not provide him with envelopes. *Id.* at 5. Mr. Wine allegedly remained in the segregation unit at MacDougall for thirty-three days. *Id.*

### 2.  Mr. Wine's Grievance Process[2]

On June 10, 2015, Mr. Wine was brought to UConn Hospital where he remained until June 12, 2012. Defs. SMF ¶ 2.

Mr. Wine entered MacDougall on June 12, 2015 and he remained at that institution until October 7, 2015. *Id.* ¶ 3.

On October 7, 2015, Mr. Wine was transferred to Hartford Correctional Center. *Id.* ¶ 3.

---

[2]To determine the undisputed facts in this case, the Court relies upon the Defendants' Rule 56(d) Statement (to the extent that it complies with the Federal Rules of Civil Procedure and the Local Rules of this District) and evidence cited therein. Mr. Wine's  Local Rule 56(a)(2) Statement fails to deny the statements made by Defendants. "Where a party asserts a fact and the opposing party either fails to deny the assertion or, in issuing a denial, the party does not cite to evidence disputing its accuracy, the Court deems such fact admitted." *Malick v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-00669 (VLB), 2015 WL 5797008, at *1 n.1 (D. Conn. Sept. 30, 2015); *see also* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in  accordance with this Local Rule[.]"). The Court deems admitted each material fact set forth in Defendants' Rule 56(d) Statement, to the extent it is supported by the evidence.

Mr. Wine became a sentenced inmate on January 8, 2016. *Id.* ¶ 4.

On February 17, 2016, Mr. Wine was transferred back to MacDougall. *Id.* ¶ 5.

Mr. Wine was thereafter transferred to Corrigan-Radgowski Correctional Center on March 15, 2016, to Hartford Correctional Center on March 18, 2016, and back to MacDougall-Walker Correction Institution on April 26, 2016, where he remains confined to date. *Id* ¶ 6.

Correctional Counselor Bennett is the Administrative Remedies Coordinator at MacDougall. *Id.* ¶ 7.

As the MacDougall Administrative Remedies Coordinator, Counselor Bennett is the Keeper of Records of inmate administrative remedies, grievances, and appeals, and she maintains the institution's Grievance Log. *Id..* ¶ 8

These records are maintained in the ordinary course of business, and it is Counselor Bennett's responsibility as the Administrative Remedies Coordinator to maintain these records. *Id.* ¶ 10.

Counselor Bennett is familiar with the Administrative Directive 9.6, Inmate Administrative Remedies that was in effect from August 15, 2013, until April 30, 2021, which applied to Mr. Wine for his 2015 claims *Id.* ¶ 11.

Administrative Directive 9.6 set forth the required process an inmate was to follow when filing a grievance pertaining to any aspect of the inmate's confinement, and the manner such grievances are processed by staff. *Id.* ¶ 12.

Administrative Directive 9.6, ¶ 6(A), required an aggrieved inmate to first seek an informal resolution of his issues, in writing, with the use of an Inmate Request Form CN 9601 before filing a formal grievance. *Id.* ¶ 13.

A response to the inmate's informal request would be made within fifteen business days from receipt of the written request. *Id.* ¶14.

If the inmate was not satisfied with the informal resolution offered or did not receive a response to his attempt at informal resolution, the inmate must then file a grievance, using form CN 9602, Inmate Grievance Form – Level 1, and attach the Inmate Request Form containing the staff member's response to it. *Id.* ¶ 15.

This must be completed within thirty calendar days of the occurrence or discovery of the cause of the grievance. *Id.* ¶ 16.

All grievances, appeals, and property claims were submitted by depositing them in a locked box clearly marked as 'Administrative Remedies.'" *Id.* ¶ 17.

Each grievance was assigned an Inmate Grievance Procedure ("IGP") number that was generated from CN 9608, Grievance Log. *Id.*¶ 16.

Mr. Wine filed one disciplinary action appeal regarding a disciplinary report he received dated June 11, 2015, for the class "A" offense of "Fighting". *Id.* ¶ 17.

Mr. Wine received this disciplinary report for a fight that took place between him and inmate Krawczynski. *Id.* ¶ 19.

Mr. Wine appealed his receipt of the disciplinary report as well as procedural issues surrounding his disciplinary hearing. *Id.* ¶ 20.

Mr. Wine did not file any Level One Administrative Remedy Grievance wherein he stated that he informed any Department of Correction staff that he was being threatened or was in danger of assault from another inmate, from inmate Krawczynski, or from members of any Security Risk Group. *Id.* ¶ 21.

Mr. Wine did not file any Level One Administrative Remedy Grievance wherein he stated that Captain Black, Lieutenant Drolet, or Lieutenant Diaz ignored his safety concerns or requests for staff assistance in keeping him safe. *Id.* ¶ 22.

Mr. Wine did not file any Level One Administrative Remedy Grievance wherein he stated that he was prevented from filing a grievance about any of these claims. Ex. B, ¶ 21.

Mr. Wine did not file any Level One Administrative Remedy Grievances from June 1, 2015, to October 7, 2015. Defs. SMF ¶ 23.

**B.  Procedural History**

On April 24, 2018, Mr. Wine filed his *pro se* Complaint. Compl.

On May 8, 2019, Mr. Wine filed his Amended Complaint. Am. Compl.

On June 11, 2021, the Court issued an Initial Review Order dismissing Mr. Wine's Amended Complaint in part. Initial Review Order.

On April 8, 2022, Defendants filed their motion for summary judgment. Defs.' Mot. for Summ. J.; Defs.' Mem. in Supp. of Mot. for Summ. J.

On the same day, Defendants filed their statement of material facts. Defs.' 56(d) Statement.

On June 9, 2022, Mr. Wine filed his opposition to Defendants' motion for summary judgment. Mem. in Opp'n re Defs.' Mot. for Summ. J., ECF No. 71(June 09, 2022) ("Pl's Mem. in Opp'n."); Obj. re Defs.' Mot. for Summ.  ECF No. 72 (June 09, 2022) ("Pl's Obj.").

On October 24, 2022, Mr. Wine moved to withdraw counsel. Mot. to Withdraw Counsel, ECF No.79 (Oct. 24, 2022).

On November 10, 2022, the Court denied Mr. Wine's motion to withdraw counsel. Order, ECF No.85 (Nov.10, 2022).

On December 06, 2022, Mr. Wine filed a supplemental statement of material facts in response to the motion for summary judgment. Suppl. Statement of Material Facts, ECF No. 92 (Dec. 06, 2022) ("Suppl. Material Facts").

On January 11, 2023, Mr. Wine filed an affidavit to establish the record in the event of an appeal. Affidavit of Daniel Wine, ECF No. 97 (Jan. 11, 2023) ("Mr. Wine Aff.").

On January 26, 2023, Mr. Wine's counsel filed a declaration of Mr. Wine. Decl. of Daniel D. Wine, ECF No. 98 (Jan. 26, 2023) ("Mr. Wine Decl.").

On January 31, 2023, Defendants filed a reply to Mr. Wine's response to the motion for summary judgment. Def. Reply to Pl. Opp'n to Def.'s Motion for Summ.J, ECF No. 99 (Jan. 31, 2023) ("Def.'s Reply").

On February 15, 2023, the Court held a hearing on the summary judgment motion. Min. Entry, ECF No. 107 (Feb. 15, 2023).

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247–48.

"[T]he substantive law will identify which facts are material." *Id*. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some

9

unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (internal citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which

summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    DISCUSSION

The remaining claim in this case is a Fourteenth Amendment failure to protect claim.

Defendants move for summary judgment on the Fourteenth Amendment claim on the ground that Mr. Wine failed to exhaust all administrative remedies before commencing this action, as required by the Prison Litigation Reform Act ("PLRA"). Defs.' Mem. in Supp. of Mot. for Summ. J. at 4–5.

The Court will address this argument.

The PLRA requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear their case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 632–36 (2016) (applying the PLRA and noting that it "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions" (quoting 42 U.S.C. § 1997e(a))). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v.*

11

*Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("In *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . rules that are defined not by the PLRA, but by the prison grievance process itself." (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006))); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (stating that exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly" (quoting *Woodford*, 548 U.S. at 90)). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (internal citation omitted)).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are, in fact, unavailable. *See Ross*, 578 U.S. at 642 ("Under § 1997e(a), the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." (internal citation and quotation marks omitted)). The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal citation and

12

quotation marks omitted).

The Supreme Court in *Ross* identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive." *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the Court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at \*4 (S.D.N.Y. July 19, 2016) ("The Supreme Court described three scenarios in which administrative procedures could be 'officially on the books,' but 'not capable of use to obtain relief,' and therefore unavailable. While not exhaustive, these illustrations nonetheless guide the Court's inquiry." (quoting *Ross*, 578 U.S. at 643)).

Exhaustion of administrative remedies is an affirmative defense. Thus, Defendants bear the burden of proof. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or

13

demonstrate exhaustion in their complaints."). Once Defendants establish that administrative remedies were not exhausted before the inmate commenced the action, Plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion, unavailability, estoppel, or special circumstances." (internal citation and quotation marks omitted)).

### A.    Administrative Directive 9.6

The Appeal of a Security Risk Group Member Designation is set forth in Administrative Directive 9.6 and is applicable to Mr. Wine's Fourteenth Amendment failure to protect claim. *See* Ex. C to Defs. Mot. for Summ. J., ECF No.67-3 ("A.D. 9.6"). A Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance. A.D. 9.6(6)(C). The grievance must include documentation of the inmate's written request to resolve the matter informally or an explanation why such documentation is not attached. *Id.*

The Unit Administrator is required to respond in writing to a Level 1 grievance within thirty business days of his or her receipt of the grievance. A.D. 9.6(6)(I). The Unit Administrator may extend the response time by up to fifteen business days upon notice to the inmate on the prescribed form. A.D. 9.6(6)(J). An inmate may appeal to Level 2 the Unit Administrator's

disposition of a Level 1 grievance or the Unit Administrator's failure to dispose of the grievance in a timely manner. A.D. 9.6(6)(G), (I), & (K). A Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. A.D. 9.6(6)(K).

An appeal of a Unit Administrator's failure to dispose of a Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. A.D. 9.6(6)(M). Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. A.D. 9.6(6)(L).

### B.   Mr. Wine's Grievances

Defendants argue that "[Mr. Wine] failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act." Defs.' Mem. in Supp. of Mot. for Summ. J. at 1. Moreover, Defendants argue that Mr. Wine failed "to file any Level One Administrative Remedy Grievances from June 1, 2015, to October 7, 2015[,]" *Id.* at 10 (citing  Def. Ex. B ¶  22), and Mr. Wine failed "to file any Level One Administrative Remedy Grievance where he described any Department of Correction staff of being threatened or in danger of assault from another inmate, from inmate Krawczynski, or members of any Security Risk Group." *Id.* (citing Def. Ex. B ¶ 19). Additionally, Defendants argue that Mr. Wine failed "to file any Level One Administrative Remedy Grievance describing the Defendants as neglecting his concerns for assistance in safety measure." *Id* (citing Def. Ex. B ¶ 20). Finally, Defendants argue that "[Mr. Wine] did not file any Level One Administrative Remedy Grievance wherein he stated that he

15

was prevented from filing a grievance about any of these claims." *Id* (citing Def. Ex. B ¶ 21).

Mr. Wine argues that "[D]efendants admit that the plaintiff exhausted his administrative remedies as to the guilty finding on a disciplinary report, dated June 11, 2015." Pl's Mem. in Opp'n at 1 (quotations marks omitted).

In reply, Defendants further argue that Mr. Wine's dispute of him "not exhaust[ing] his administrative remedies with regard to his being threatened or [being] in danger of assault from another inmate . . . is not the issue that the Plaintiff pled in his Amended Complaint, nor is it the issue that this Court authorized to proceed in its IRO." Defs.' Reply at 10. Moreover, Defendants argue that "the claim that is the subject of summary judgment is whether, *with knowledge* of credible threats made against [Mr. Wine's] life, the Defendants failed to act to protect him leading to his violent assault on June 10, 2015." *Id.*

Defendants argue that "there is no credible basis for . . . Mr. Wine to now argue that his efforts to appeal his ticket for fighting, effectively addressed his failure to protect claim as well." *Id.* Thus, Defendants argue that "even if the Plaintiff had included allegations in his appeal paperwork that DOC officials had failed to protect him from the assault, that would have been the wrong forum to address that complaint and Defendants would still be entitled to summary judgment for failure to exhaust." *Id.*

In Mr. Wine's supplemental filing to his objection, Mr. Wine argues that "[his] Declaration makes clear that . . . he exhausted available administrative remedies." Pl. Suppl. Opp'n at 4 (citing Pl.'s Decl. ¶¶ 10–18). Mr. Wine contends that "[he] appealed the Disciplinary Action and prepared an Administrative Remedy Form." *Id;* (citing Administrative Report at 22–

23, ECF No. 1-2). Moreover, Mr. Wine argues that "[his] Declaration indicates that his intent in pursuing the appeal was to address all substantive and procedural issues related to receipt of the disciplinary report," thus "including [him] not being allowed to explain that he had requested that the [D]efendants Drolet, Diaz, and Black provide protection from inmate Krawcyzynski and failed to do so." *Id.* (citing Pl.'s Decl. ¶ 14). Thus, Mr. Wine contends that "[t]he Administrative Remedy Form itself confirms that the plaintiff exhausted administrative remedies." *Id.* (citing Administrative Report at 24, ECF No.1-2, ("You have exhausted DOC Administrative Remedies.")). In addition, Mr. Wine contends that he was not "permitted to speak at the so-called hearing" and "[a]s a result he was not allowed to discuss this matter with counsel and was unable to and did not receive any legal advice." *Id.* at 6. Mr. Wine argues that "[t]hese circumstances indicate he was excused from exhausting administrative remedies because the defendant's conduct rendered an effective administrative remedy unavailable." *Id.*

The Court agrees.

Mr. Wine has raised a genuine issue of material fact of whether he exhausted his administrative remedies.

Defendants have satisfied their initial burden of establishing that grievance procedures existed. *See* Def. Ex. B ¶ 5 ("As the MWCI Administrative Remedies Coordinator, Counselor Bennett is the Keeper of Records of inmate administrative remedies, grievances, and appeals, and she maintains the institution's Grievance Log."). Therefore, Mr. Wine must show that he exhausted these procedures or that these procedures were unavailable. *See Hubbs*, 788 F.3d at 59 ("If the defendants meet this initial burden, administrative remedies may nonetheless be deemed

17

unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact."). In *Ross*, the Supreme Court clarified that a grievance procedure may be unavailable when it is "so opaque that it becomes, practically speaking, incapable of use," 578 U.S. at 643, or when "the correctional facility's staff misled the inmate as to the existence or rules of the grievance process," *id.* at 644 (quoting *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015)). Since *Ross*, district courts in this Circuit have generally concluded that "grievance procedures are not 'unavailable' simply because a plaintiff was unaware of the existence of the procedure," although the Second Circuit has not resolved this question definitively. *Martinez v. Payne*, No. 3:20-cv-231 (JAM), 2021 WL 3493616, at *5 (D. Conn. Aug. 7, 2021).

Here, Mr. Wine allegedly filed an appeal to his disciplinary action with the intention of pursing an appeal to address all substantive and procedural issues related to receipt of the disciplinary report. *See* Pl.'s Decl. ¶ 14 ("Once I was issued the DR for fighting and the ticket the proper AD to rectify all the issues in association with the DR fall under the AD 9.5 Code of Penal Discipline Offenses."). In addition, Mr. Wine asserts that he intended to explain within his appeal why Defendants failed to protect him from Mr. Krawcyzynski. *Id.*

But leaving these assertions – and belated self-serving ones at that – it is undisputed that Mr. Wine filed a timely appeal, triggering the administrative procedure under A.D. 9.6.  Def. Reply Ex. A. at 2, ECF No. 99-1 (the Administrative Remedy Receipt form, CN9603, noting that "[t]he Admin Remedies Coordinator has received your: [appeal] and the appropriate procedure will commence in accordance with AD 9.6, Inmate Administrative Remedies," dated July 17,

2015). In that appeal, filed on July 13, 2015, Mr. Wine directly raised the issue of his physical safety: "I was assaulted I didn't even see it coming and it was never reported to the State Police by the DOC; however my lawyer did report it and the State Police are now investigating this and Officer Stebbins in handling the investigation." *Id.* at 4. In other words, this filing creates a genuine issue of fact as to whether the Defendants were sufficiently put on notice about Mr. Wine's alleged physical safety concerns. *See Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 621 (2d Cir. 1996) ("[T]he district court . . . erred in concluding that there was not a genuine issue as to the reasonableness of the defendants' protective measures after the . . . attack[.]"); *see also Grant v. Hogue*, No. 17-CV-3609, 2019 WL 3066378, at *7 (S.D.N.Y. July 12, 2019) (declining to grant summary judgment on failure-to-protect claim where the "[p]laintiff's testimony arguably describe[d] a previous altercation with [the other inmate] coupled with a complaint by [the] plaintiff to prison officials or a request to be separated from the attacker" (citations, quotation marks, and alterations omitted)); *cf. Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (remanding to the district court because "[w]hether or not Johnson's disciplinary appeals was enough to alert . . . the prison to the nature of the wrong for which redress is sought, is not manifestly obvious") (citation and internal quotation mark omitted).

Alternatively, as in *Ross*: "The facts of this case raise questions about whether, given these principles, [Wine] had an 'available' administrative remedy to exhaust." *Ross*, 578 U.S. at 645; *see Booth v. Churner*, 532 U.S. 731, 736 (2001) ("[W]here the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust."); *cf. Johnson*, 380 F.3d at 697 (remanding case back to district court to determine, *inter alia*, whether "the BOP grievance

regulations were sufficiently confusing so that a prisoner like Johnson might reasonably have believed that he could raise his claim against Testman as part of his defense in disciplinary proceedings").

Therefore, there is a genuine issue of material fact as to whether Mr. Wine exhausted his administrative remedies under PLRA. *Id.*

Of course, consistent with the caselaw noted above, if there is a genuine issue of fact as to exhaustion arising out of the July 13, 2015 appeal filed by Mr. Wine, the resulting Fourteenth Amendment failure to protect claim against Lieutenant Drolet, Lieutenant Diaz, and Captain Black is limited to their alleged failure to protect Mr. Wine against this specific assault.

Accordingly, Defendants' motion for summary judgment will be denied on exhaustion grounds.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut this 17th day of February, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE