**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DANIEL WINE,
    *Plaintiff*,

    v.                      No. 3:18-cv-704 (VAB)

RONALD BLACK ET AL.,
    *Defendants*.

**RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS BASED ON PLAINTIFF'S FAILURE TO EXHAUST**

Following an evidentiary hearing and before the start of trial, Christopher Drolet, Ivette Diaz, and Ronald Black (collectively, "Defendants") have moved to dismiss Daniel Wine's claim on the basis that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

For the following reasons, the motion to dismiss based on failure to exhaust administrative remedies is **DENIED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts were summarized in the Ruling and Order on the Motion for Summary Judgement.

### 1.  Mr. Wine's Grievances[1]

---

[1] The facts are taken, in part, from Mr. Wine's Amended Complaint, Defendants' Rule 56(d) Statement (Defendant filed a Local Rule 56(d) Statement instead of a Local Rule 56(a)(1) Statement), and supporting exhibits filed by all parties. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

Mr. Wine entered MacDougall-Walker Correction Institution as a pretrial detainee on June 30, 2014. Defs.' Rule 56(d) Statement of Undisputed Mat. Facts ¶ 1 ("Defs.' SMF").

At some point before June 10, 2015, several other inmates at MacDougall, who were allegedly known or suspected members of the Aryan Brotherhood Gang, including Robert Krawczynski, allegedly made direct threats to harm or physically injure Mr. Wine. Am. Compl at 3.

On June 4, 2015, an officer allegedly instructed Mr. Wine to speak to Lieutenants Drolet and Diaz regarding these allegedly serious and credible threats to his physical safety. *Id.* Later that day, Mr. Wine allegedly pleaded with Lieutenants Drolet and Diaz to implement measures to protect him from harm, but they allegedly took no action and advised him to return to his housing unit. *Id.* at 3–4. Mr. Wine then allegedly spoke to Captain Black and informed him that he feared that inmates who were members of the Aryan Brotherhood Prison Gang, including Mr. Krawczynski, would assault him. *Id.* at 4. Captain Black allegedly suggested that Mr. Wine "try to duck" if these inmates attempted to assault him. *Id.*

On June 10, 2015, Mr. Krawczynski allegedly viciously assaulted Mr. Wine. *Id.* The assault allegedly rendered Mr. Wine "unconscious, bloody, and lifeless." *Id.* Prison officials allegedly transported Mr. Wine to an outside hospital, where a surgeon allegedly treated him for a broken jaw and a stab wound to his lower lip. *Id.* Mr. Wine allegedly remained in the hospital for an extended period. *Id.* On June 14, 2015, Mr. Wine allegedly was confined to the hospital unit at MacDougall. *Id.;* Pl. Ex. A-1 at 2, ECF No. 1-2 (Conn. Dep't of Corr. Inmate Request Form (June 14, 2015)).

Mr. Wine allegedly made requests to contact the Connecticut State Police Department to report the assault "in an effort to have the assailant criminally prosecuted" but correctional

officials, including Captain Black and Lieutenants Drolet and Diaz, allegedly denied his requests. *Id.* at 5–6.

Mr. Wine then allegedly made requests to contact his criminal attorney to inform him about the assault, but correctional staff members allegedly repeatedly informed Mr. Wine that they could not confirm his attorney's telephone number. *Id.* at 5; Pl. Exs. A-1 to A-7 at 1–14, ECF No. 1-2 (Conn. Dep't of Corr. Inmate Request Forms (June 14, 2015, through July 1, 2015)).

Mr. Wine also allegedly could not contact his family by telephone because the Department of Correction ("DOC") "shut off his pin number" and allegedly could not contact his family by mail because prison officials would not provide him with envelopes. *Id.* at 5. Mr. Wine allegedly remained in the segregation unit at MacDougall for thirty-three days. *Id.*

### 2.  Mr. Wine's Grievance Process

On June 10, 2015, Mr. Wine was brought to UConn Hospital where he remained until June 12, 2012. Defs. SMF ¶ 2.

Mr. Wine entered MacDougall on June 12, 2015, and he remained at that institution until October 7, 2015. *Id.* ¶ 3.

On October 7, 2015, Mr. Wine was transferred to Hartford Correctional Center. *Id.* ¶ 3.

Mr. Wine became a sentenced inmate on January 8, 2016. *Id.* ¶ 4.

On February 17, 2016, Mr. Wine was transferred back to MacDougall. *Id.* ¶ 5.

Mr. Wine was thereafter transferred to Corrigan-Radgowski Correctional Center on March 15, 2016, then to Hartford Correctional Center on March 18, 2016, and back to MacDougall-Walker Correction Institution on April 26, 2016, where he remains confined to date. *Id.* ¶ 6.

Correctional Counselor Bennett is the Administrative Remedies Coordinator at MacDougall. *Id.* ¶ 7.

As the MacDougall Administrative Remedies Coordinator, Counselor Bennett is the Keeper of Records of inmate administrative remedies, grievances, and appeals, and she maintains the institution's Grievance Log. *Id.* ¶ 8.

These records are maintained in the ordinary course of business, and it is Counselor Bennett's responsibility as the Administrative Remedies Coordinator to maintain these records. *Id.* ¶ 10.

Counselor Bennett is familiar with the Administrative Directive 9.6, Inmate Administrative Remedies, that was in effect from August 15, 2013, until April 30, 2021, which applied to Mr. Wine for his 2015 claims. *Id.* ¶ 11. Administrative Directive 9.6 sets forth the required process an inmate was to follow when filing a grievance pertaining to any aspect of the inmate's confinement and the manner such grievances are processed by staff. *Id.* ¶ 12. Administrative Directive 9.6, ¶ 6(A), required an aggrieved inmate to first seek an informal resolution of his issues, in writing, with the use of an Inmate Request Form CN 9601 before filing a formal grievance. *Id.* ¶ 13.

A response to the inmate's informal request would be made within fifteen business days from receipt of the written request. *Id.* ¶14.  If the inmate was not satisfied with the informal resolution offered or did not receive a response to his attempt at informal resolution, then the inmate must then file a grievance, using form CN 9602, Inmate Grievance Form – Level 1, and attach the Inmate Request Form containing the staff member's response to it. *Id.* ¶ 15. This must be completed within thirty calendar days of the occurrence or discovery of the cause of the grievance. *Id.* ¶ 16.

"All grievances, appeals, and property claims were submitted by depositing them in a locked box clearly marked as 'Administrative Remedies.'" *Id.* ¶ 17. Each grievance was assigned an Inmate Grievance Procedure number that was generated from CN 9608, Grievance Log. *Id.* ¶ 16. Mr. Wine filed one disciplinary action appeal regarding a disciplinary report that he received, dated June 11, 2015, for the class "A" offense of "Fighting". *Id.* ¶ 17.

Mr. Wine received this disciplinary report for a fight that took place between him and inmate Krawczynski. *Id.* ¶ 19.

Mr. Wine appealed his receipt of the disciplinary report as well as procedural issues surrounding his disciplinary hearing. *Id.* ¶ 20.

The following evidence was presented by Plaintiff at the evidentiary hearing that the Court held on December 14, 2023, Min. Entry, ECF No. 207, in connection with this motion:

> In connection with assault the plaintiff received a disciplinary report which found him guilty of "fighting." The Summary Report indicates a hearing date of July 1, 2015. It further indicates that the plaintiff received notice of the decision on July 2, 2015. On July 13, 2015 the plaintiff filed a timely appeal of the disciplinary report. The plaintiff was provided an "Administrative Remedy Receipt" acknowledging that the Administrative Remedies Coordinator received his Appeal.

Pl.'s Post-Hearing Brief at 2, ECF No. 225 ("Pl. Brief") (citations omitted).

> The Inmate Administrative Remedy Form states the appeal was "Denied." The date of disposition is listed as August 5, 2015. In the box designating the reason the appeal was denied it is indicated "see attached disposition letter." The disposition letter is dated August 5, 2015 and signed by Angel Quiros, District Administrator. The letter provides in pertinent part that "(t)he Hearing Officer's finding was reasonable. . . . Documentation submitted to the presiding Hearing Officer substantiates that you (the plaintiff) were in a physical altercation with another inmate and the officer on duty observed punches being exchanged." The Administrative Remedy Form specifically states: "You have "exhausted DOC's Administrative Remedies."

5

*Id.* at 3 (citations omitted). The following evidence was presented by Defendants at the evidentiary hearing:

> DOC checked the "You have exhausted DOC's administrative remedies" box at the bottom of his disciplinary appeal . . . Witness Acus testified that the 9602 form that the Plaintiff used to submit his appeal was a general form, used at the time, for grievances, health services reviews, and administrative appeals. It was the inmate's responsibility when filing his complaint to follow the instructions in Section 1 and indicate which administrative remedy he was seeking by selecting the appropriate box. DOC administrators would then process the paperwork in accordance with the inmate's instructions . . . Plaintiff did not file his disciplinary appeal until July 13, 2015, more than thirty days after his altercation with inmate Krawczynski, and did not receive the DOC's check-box response until August 5, 2015.

Def.'s Reply to Pl.'s Post-Hearing Brief at 7, ECF No. 229 ("Def. Reply") (citations omitted).

Mr. Wine did not file any Level One Administrative Remedy Grievance wherein he stated that he informed any Department of Correction staff that he was being threatened or was in danger of assault from another inmate, from inmate Krawczynski, or from members of any Security Risk Group. Defs. SMF ¶ 21. Mr. Wine did not file any Level One Administrative Remedy Grievance wherein he stated that Captain Black, Lieutenant Drolet, or Lieutenant Diaz ignored his safety concerns or requests for staff assistance in keeping him safe. *Id.* ¶ 22. Mr. Wine did not file any Level One Administrative Remedy Grievance wherein he stated that he was prevented from filing a grievance about any of these claims. *Id.* ¶ 21.

Mr. Wine did not file any Level One Administrative Remedy Grievances from June 1, 2015, to October 7, 2015. *Id.* ¶ 23.

### A.  Procedural History

On April 24, 2018, Mr. Wine filed his *pro se* Complaint. Compl.

On May 8, 2019, Mr. Wine filed his Amended Complaint. Am. Compl.

On June 11, 2021, the Court issued an Initial Review Order dismissing Mr. Wine's Amended Complaint in part. Initial Review Order.

On April 8, 2022, Defendants filed their motion for summary judgment. Defs.' Mot. for Summ. J.; Defs.' Mem. in Supp. of Mot. for Summ. J.

On the same day, Defendants filed their statement of material facts. Defs. SMF.

On June 9, 2022, Mr. Wine filed his opposition to Defendants' motion for summary judgment. Mem. in Opp'n re Defs.' Mot. for Summ. J., ECF No. 71 (June 9, 2022); Obj. re Defs.' Mot. for Summ. J. ECF No. 72 (June 9, 2022).

On October 24, 2022, Mr. Wine moved to withdraw counsel. Mot. to Withdraw Counsel, ECF No.79 (Oct. 24, 2022).

On November 10, 2022, the Court denied Mr. Wine's motion to withdraw counsel. Order, ECF No.85 (Nov. 10, 2022).

On December 06, 2022, Mr. Wine filed a supplemental statement of material facts in response to the motion for summary judgment. Suppl. Statement of Material Facts, ECF No. 92 (Dec. 06, 2022).

On January 11, 2023, Mr. Wine filed an affidavit to establish the record in the event of an appeal. Affidavit of Daniel Wine, ECF No. 97 (Jan. 11, 2023).

On January 26, 2023, Mr. Wine's counsel filed a declaration of Mr. Wine. Decl. of Daniel D. Wine, ECF No. 98 (Jan. 26, 2023).

On January 31, 2023, Defendants filed a reply to Mr. Wine's response to the motion for summary judgment. Def. Reply to Pl. Opp'n to Def.'s Motion for Summ. J, ECF No. 99 (Jan. 31, 2023).

On February 15, 2023, the Court held a hearing on the summary judgment motion. Min. Entry, ECF No. 107 (Feb. 15, 2023).

On February 17, 2023, the Court denied the summary judgment motion. Order on Mot. for Summ. J., ECF No. 108 (Feb. 17, 2023).

On February 23, 2023, Defendants moved for reconsideration of the Order denying summary judgment. Mot. for Reconsideration, ECF No. 112 (Feb. 23, 2023).

On February 28, 2023, the Court denied Defendant's motion for reconsideration. Order denying Mot. for Reconsideration, ECF No. 113 (Feb. 28, 2023).

On August 23, 2023, Defendants moved for a pretrial evidentiary hearing on exhaustion. Mot. for Hrg., ECF No. 168 (Aug. 23, 2023).

On December 14, 2023, the Court held a pretrial evidentiary hearing on exhaustion. Min. Entry, ECF No. 207 (Dec. 14, 2023); *see also* Tr. of Proceedings, ECF No. 206 (Dec. 21, 2023) ("Tr.").

On December 22, 2023, Defendants filed a Post-Hearing Memorandum of Law Re: Plaintiff's Failure to Exhaust, in which they moved this Court to dismiss the Complaint against them, in its entirety, with prejudice based on Plaintiff's failure to properly exhaust administrative remedies. Notice, ECF No. 210 (Dec. 22, 2023) ("Def. Mem.").

On January 23, 2024, Mr. Wine filed Plaintiff's Post-Hearing Brief. Pl. Brief.

On February 8, 2024, Defendants filed a reply to Plaintiff's Post-Hearing Brief. Def. Reply.

On February 27, 2024, Defendants filed a Notice of Supplemental Authority. Not., ECF No. 231, (Feb. 27, 2024).

On April 17, 2024, Defendants filed another Notice of Supplemental Authority. Not., ECF No. 233 (Apr. 17, 2024).

## II.      STANDARD OF REVIEW

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process, *Booth v. Churner*, 532 U.S. 731, 738 (2001).

The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that the inmate must comply with all "procedural rules," including filing deadlines, required by the particular prison grievance system. *Id.* at 90–91. "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83–84). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Cicio v. Wenderlich*, 714 F. App'x 96, 98 (2d Cir. 2018) ("Because Cicio did not exercise his right of appeal, he did not exhaust the available administrative remedies. Accordingly, the PLRA bars the instant action.").

The exhaustion requirement may be excused, however, when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738). The Supreme Court has identified three types of circumstances in which an administrative procedure is unavailable and, therefore, need not be exhausted: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are, in fact, unavailable. *See Ross*, 578 U.S. at 642 ("Under § 1997e(a), the exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." (internal citation and quotation marks omitted)).

The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive." *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the Court is guided by these illustrations. *See*

*Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19,

2016) ("The Supreme Court described three scenarios in which administrative procedures could

be 'officially on the books,' but 'not capable of use to obtain relief,' and therefore unavailable.

While not exhaustive, these illustrations nonetheless guide the Court's inquiry." (quoting *Ross*,

578 U.S. at 643)).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones*, 549 U.S.

at 216. Thus, defendants "bear the initial burden of establishing . . . that a grievance process

exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59. "If the defendants meet this

initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff

can demonstrate that other factors—for example, threats from correction officers—rendered a

nominally available procedure unavailable as a matter of fact." *Id.*

"Once the defendant has shown that a grievance procedure exists and applies to the

underlying dispute, the plaintiff bears the burden of showing that the identified grievance

procedure was unavailable under *Ross*." *Langron v. Koniecko*, No. 3:21-CV-1531 (MPS), 2023

WL 3290026, at *3 (D. Conn. May 5, 2023) (citing *Hubbs*, 788 F.3d at 59); *see also*

*Papantoniou v. Quiros*, No. 3:19-CV-1996 (KAD), 2021 WL 4224587, at *6 (D. Conn. Sept. 16,

2021) ("If the defendants establish that administrative remedies were not exhausted before the

plaintiff commenced the action, the plaintiff must demonstrate that the administrative remedy

procedures were not available to him under *Ross*." (citing *Jones*, 549 U.S. at 216)). And "a

district court still may dismiss a complaint for failure to exhaust administrative remedies if it is

clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion

requirement." *Scott v. Westchester Cnty.*, 434 F. Supp. 3d 188, 197 (S.D.N.Y. 2020) (quoting

*Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)).

III.    DISCUSSION

**A. The PLRA's Exhaustion Requirement**

Exhaustion under the PRLA is required for procedures that are "capable of use to obtain

some relief for the action complained of." *Ross*, 578 U.S. at 642. "This requirement, notably,

relates not to the available remedy, but to the available administrative procedure." *Thomas v.*

*Aldi*, No. 3:18-CV-1350 (VAB), 2022 WL 16716160, at *9 (D. Conn. Nov. 4, 2022), *aff'd*, No.

22-3069, 2024 WL 796017 (2d Cir. Feb. 27, 2024) (citing *Ross* at 642 and *Rucker v. Giffen*, 997

F.3d 88, 92–93 (2d Cir. 2021)). "[T]he standard . . . is not whether the prisoner has a reason to

pursue administrative remedies; it is whether such remedies are available to him." *Ruggiero*, 467

F.3d at 176 (finding that the plaintiff was not excused from exhausting administrative remedies

when he informally reported mistreatment but never filed a grievance and then obtained the relief

he sought).

"[T]he concept of availability speaks to the procedural means, not the particular relief

ordered, since one exhausts processes, not forms of relief. The grievance process is unavailable

only if it does not afford the possibility of some relief for the action complained of[.]" *Scott v.*

*Greene*, No. 3:20-CV-01904 (SALM), 2022 WL 903293, at *8 (D. Conn. Mar. 28, 2022), *aff'd*,

No. 22-930, 2023 WL 2563896 (2d Cir. Mar. 20, 2023) (internal citations and quotation marks

omitted). In *Scott v. Greene*, the court rejected the plaintiff's argument that the grievance process

was futile because nothing could be done to help her anymore and found that "Congress

eliminated the 'effectiveness' prerequisite to § 1997e(a) defenses, which indicates Congress's

intent to preclude futility or other exceptions from the exhaustion requirement." *Id.* at 10 n.4

(citing *Nunez v. Goord*, 172 F. Supp. 2d 417, 428 (S.D.N.Y. 2001)); *see also Hartry v. Cnty. of*

*Suffolk*, 755 F. Supp. 2d 422, 431 (E.D.N.Y. 2010) (rejecting the plaintiff's assertion that the

administrative remedy was "'unavailable' because the remedy he sought was transfer to NCCF,

and therefore there was no other 'relief' he could have received from the grievance procedure"

and found that "where a plaintiff receives the remedy he would have otherwise sought through

the grievance procedure[,] the plaintiff must still exhaust the formal administrative procedures"

(citing *Ruggiero*, 467 F.3d at 177)); *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2021 WL

4392305, at *13 (S.D.N.Y. Sept. 24, 2021) (disagreeing with plaintiff's claim that no grievance

was needed because there was no relief that could have been obtained) (citing cases).

　　　"[A]side from the 'significant' textual qualifier that 'the remedies must indeed be

"available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust—

irrespective of any "special circumstances."'" *Williams*, 829 F.3d 118, 123 (2d Cir. 2016)

(quoting *Ross* 578 U.S. at 632). Three such circumstances have been identified:

> First, an administrative remedy may be unavailable when "it
> operates as a simple dead end—with officers unable or consistently
> unwilling to provide any relief to aggrieved inmates." Second, "an
> administrative scheme might be so opaque that it becomes,
> practically speaking, incapable of use." In other words, "some
> mechanism exists to provide relief, but no ordinary prisoner can
> discern or navigate it." Third, an administrative remedy may be
> unavailable "when prison administrators thwart inmates from taking
> advantage of a grievance process through machination,
> misrepresentation, or intimidation."

*Williams*, 829 F.3d at 123–24 (2d Cir. 2016) (citing *Ross*, 578 U.S at 642–44) (internal citations

omitted); *see also Thomas*, 2022 WL 16716160, at *9 ("administrative remedies are

'unavailable'" in the three circumstances identified by the Supreme Court) (quoting *Ross*, 578

U.S. at 641–42)). But these three enumerated circumstances are not exhaustive. *Romano v.

Ulrich*, 49 F.4th 148, 154–55 (2d Cir. 2022) ("[W]e did not shoehorn this exception into *Ross*'s

'three kinds of circumstances' where administrative remedies may be considered unavailable.

Instead, we reiterated that *Ross*'s three circumstances are not 'exhaustive.'" (citations omitted)).

Following *Ross*, the Second Circuit, in *Williams*, 829 F.3d 118 (2d Cir. 2016), revised its inquiry so that it no longer included the "special circumstances" inquiry and instead engaged in a two-part inquiry to guide the analysis of whether a plaintiff has satisfied the PLRA. "First, courts must ask 'whether administrative remedies were in fact available to the plaintiff. 'Second, a court must consider 'whether administrative remedies were actually available to the aggrieved inmate.'" *Osborn v. Williams*, No. 3:14-CV-1386 (VAB), 2017 WL 6731714, at *5 (D. Conn. Dec. 29, 2017), *aff'd*, 792 F. App'x 88 (2d Cir. 2019), *as amended* (Dec. 11, 2019) (quoting *Priatno*, 829 F.3d 118, 122–123 (2d Cir. 2016)); *see also Scott*, 434 F. Supp. 3d at 197 ("A prisoner's duty to exhaust can be excused only when the administrative remedy is unavailable, or put differently, 'officially on the books [but] . . . not capable of use to obtain relief.'" (quoting *Ross*, 578 U.S. at 642–44)). In *Williams*, the court assumed that an administrative remedy was "officially on the books", but that "even if Williams technically could have appealed his grievance" the regulatory was so opaque and confusing that no reasonable prisoner could use it. 829 F.3d at 124.

Significantly before *Ross*, in *Johnson v. Testman*, 380 F.3d 691, 696 (2d Cir. 2004), the Second Circuit considered "whether Johnson's appeal of his disciplinary conviction sufficed to exhaust his claim against defendant Testman." *Id.* The court vacated and remanded the district court's dismissal based on failure to exhaust so that the district court could consider whether "BOP grievance regulations were sufficiently confusing so that a prisoner like Johnson might reasonably have believed that he could raise his claim against Testman as part of his defense in disciplinary proceedings." *Id.* at 697. On remand, the district court was to consider "(1) whether Johnson was justified in raising his complaint about Testman through a disciplinary appeal, rather than by filing a separate grievance, and (2) whether Johnson's descriptions, in his

disciplinary appeals, of Testman's conduct, can be construed as 'afford[ing] corrections officials time and opportunity to address complaints internally.'" *Id.* at 698 (quoting *Porter*, 534 U.S. at 525).

And even after *Ross*, courts in this District continue to apply *Johnson* for the principle that exhaustion under the PLRA requires notice to prison officials. *See*, *e.g.*, *Jordan v. Gifford*, No. 3:19-CV-1628 (CSH), 2023 WL 2895883, at *2 (D. Conn. Apr. 11, 2023) ("A prisoner grievance must therefore provide notice of the factual basis of the claim to afford the agency that opportunity. Indeed, 'inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" (quoting *Johnson* 380 F.3d at 697) (citation omitted))); *Papantoniou*, 2021 WL 4224587, at *9 ("'inmates must provide enough information [in a prison grievance] about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" (quoting *Johnson*, 380 F.3d at 697)); *Fluker v. Kelly*, No. 3:20-CV-00179 (SVN), 2022 WL 17830730, at *7 (D. Conn. Dec. 21, 2022), *aff'd*, No. 23-307, 2024 WL 506578 (2d Cir. Feb. 9, 2024) ("It is clear that Plaintiff provided 'enough information' to ensure that facility administrators were notified and given the opportunity to 'take appropriate responsive measures' with respect to his Insufficient Evidence claim.") (quoting *Johnson*, 380 F.3d at 697); *Morgan v. Semple*, No. 3:16-CV-225 (VAB), 2020 WL 2198117, at *25 (D. Conn. May 6, 2020) ("The exhaustion requirement is intended to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' Mr. Morgan was required to 'provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" (quoting *Johnson*, 380 F.3d at 697) (citations omitted))).

The extent to which, after *Ross*, exhaustion of a disciplinary appeal in satisfaction of the

PLRA's exhaustion requirement remains viable depends on whether prison officials had reason

from the disciplinary appeal to be on notice. *See*, *e.g.*, *Jordan*, 2023 WL 2895883, at *4 ("neither

appeal included sufficient facts to provide notice to prison officials about his improper

decontamination complaint"); *Papantoniou*, 2021 WL 4224587, at *9 ("found only one

grievance appeal filed by Papantoniou on May 30, 2018 which related to a disciplinary report.

Indeed, Papantoniou concedes that he did not file a grievance regarding the alleged deliberate

indifference by Officer Russell and Lieutenant Jasmin to his need for medical treatment"

(citations omitted)); *Lopez v. Semple*, No. 3:18-CV-1907 (KAD), 2021 WL 2312563, at *7 (D.

Conn. June 7, 2021) ("Lopez filed an appeal of his disciplinary guilty finding on the contraband

charge, but there is no evidence that he filed any administrative grievance asserting a due process

violation in connection with the disciplinary hearing. However, an appeal of a disciplinary

finding may, in certain circumstances, constitute an exception to the exhaustion rule.").

As a result, after *Ross*, courts in the Second Circuit have found, in some circumstances,

that "[a]n appeal of a disciplinary finding may constitute an exception to the exhaustion of

administrative remedies rule." *Otero v. Purdy*, No. 3:19-CV-01688 (VLB), 2021 WL 4263363,

at *8–9 (D. Conn. Sept. 20, 2021) (denying defendants' summary judgment motion on

exhaustion grounds because "Plaintiff's disciplinary appeal of his guilty finding sufficiently

provided 'a fair and full opportunity' for DOC to adjudicate the substance of his Fourteenth

Amendment procedural due process claims in this action prior to the filing of this action." (citing

*Woodford*, 548 U.S. at 90)); *see also Ramirez v. Allen*, No. 3:17-CV-01335 (MPS), 2018 WL

5281738, at *7 (D. Conn. Oct. 24, 2018) ("An appeal of a disciplinary action is also an exception

to the standard administrative remedy procedures.").

For example, in *Ramirez*, the defendants argued that correctional officers who were

defendants in the case and who had intervened in a fight between the plaintiff and another inmate were not involved in the plaintiff's disciplinary hearing so appealing the guilty finding from the disciplinary hearing did not exhaust the claims against them. 2018 WL 5281738, at *7.  The plaintiff argued that the defendant correctional officers "improperly issued the disciplinary report and . . . failed to investigate his version of events." *Id.* "As these claims directly relate to the guilty finding, the Court concludes that appealing the guilty finding does exhaust the plaintiff's administrative remedies with regard to these claims." *Id.*

Other courts similarly have followed this principle: finding exhaustion under the PLRA if the disciplinary appeal provided a sufficient basis for consideration of the other claims later sought to be raised. *See Paschal-Barros v. Kenny*, No. 3:18-CV-1870 (VLB), 2019 WL 2720739, at *5 (D. Conn. June 28, 2019) ("In this case, the disciplinary appeal does not adequately notify the defendants of any challenge to their use of force."); *Waters v. Melendez*, No. 15-CV-0805 (TJM) (CFH), 2018 WL 3079764, at *7–8 (N.D.N.Y. May 18, 2018) ("[t]hough a disciplinary hearing is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, allegations of staff misconduct related to the incidents giving rise to the incident must be grieved" (citing *Barker v. Smith*, No. 16-CV-76, 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017))); *Waters v. Melendez*, No. 15-CV-0805 (TJM) (CFH), 2018 WL 3079764, at *8 (N.D.N.Y. May 18, 2018), *report and recommendation adopted*, No. 915-CV-805 (TJM) (CFH), 2018 WL 3069209 (N.D.N.Y. June 21, 2018), *aff'd*, 783 F. App'x 56 (2d Cir. 2019); *Martin v. Wyckoff*, No. 9:16-CV-0717 (MAD) (TWD), 2018 WL 7356771, at *6 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, No. 9:16-CV-00717 (TJM) (TWD), 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019) ("Plaintiff's excessive force claim against Wyckoff does not arise directly out of the disciplinary hearing. Therefore, Plaintiff was required

to separately exhaust his excessive force claim against Wyckoff[.]"); *Scott v. Gardner*, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003), *on reconsideration in part*, 344 F. Supp. 2d 421 (S.D.N.Y. 2004), *and on reconsideration in part*, No. 02-CIV-8963 (RWS), 2005 WL 984117 (S.D.N.Y. Apr. 28, 2005) ("Although completion of the disciplinary appeal process may satisfy the exhaustion requirement with respect to Scott's claims that he was denied due process in the disciplinary proceedings, allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved."); *McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003) ("An appeal of the disciplinary hearing determination does not satisfy the PLRA's exhaustion requirement.").

### B. The DOC's Administrative Directive 9.6 ("AD 9.6") and Its Available Inmate Administrative Remedies

At the hearing, Defendants presented evidence about the grievance process in place and applicable to the underlying dispute. The evidence is as follows:

At all relevant times to the events of this case, the State of Connecticut Department of Correction ("DOC") Administrative Directive, Directive Number 9.6, with an 8/15/2013 Effective Date, outlined the administrative processes in place. Ex. C to Defs.' Mot. for Summary J., ECF No. 67-3 (Apr. 8, 2022) ("AD 9.6 Effective 8/15/2013–4/30/2021").[2] The AD 9.6 Effective 8/15/2013–4/30/2021 is a 14-page single-spaced directive titled "Inmate Administrative Remedies" with the following nineteen (19) sections:

1. Policy.
2. Authority and Reference.
3. Definitions.
4. Administrative Remedies.

---

[2] The AD 9.6 was revised and the DOC now has a new version with an effective date of 4/30/2021. *See* State of Connecticut Dept. of Corrections Administrative Directive, *Inmate Administrative Remedies* (Apr. 30, 2021) https://portal.ct.gov/doc/ad/ad-chapter-9 ("Revised AD 9.6 Effective 4/30/2021").

5. General Provisions.
6. Inmate Grievance Procedure.
7. Appeal of a Classification Decision.
8. Appeal of Special Management Decision.
9. Appeal of Security Risk Group Member Designation,
10. Appeal of a Disciplinary Action.
11. Appeal of Decision to Reject Religious or Educational Tapes/CDs Not Available in the Commissary.
12. Appeal of a Media Review Committee Decision.
13. Appeal of a Decision to Reject Unacceptable Correspondence.
14. Appeal of a Furlough Decision.
15. Appeal of an Americans with Disabilities Act (ADA) Decision.
16. Property Claims
17. Appeal of Determination of Retroactive RREC credits.
18. Forms and Attachments
19. Exceptions.
12. Exceptions.[3]

*Id*. Many sections have subsections, and multiple sub-subsections within those subsections. *Id*.

The Court finds that multiple sections and/or sub-sections are relevant to whether Mr. Wine

exhausted his administrative remedies and will include those relevant sections below.

> 3. Definitions. For the purposes stated herein, the following definitions apply:
> . . .
> > C. Appeal. The application for formal review of an agency decision.
> > . . .
> 4. Administrative Remedies. There are several administrative remedies, each addressing a different aspect of correctional management.
> > A. Inmate Grievance Procedure. The Inmate Grievance Procedure is outlined in Section 6 of this Directive. The Inmate Grievance Procedure provides an administrative remedy for all matters subject to the Commissioner's authority that are not specifically identified in Sections 4(B) through 4(I) of this Directive.
> > . . .
> > E. Appeal of a Disciplinary Action. An appeal of a guilty finding received at a disciplinary hearing shall be in accordance with Section 10 of this Directive.
> > . . .

---

[3] The revised directive now has twelve sections. *See* Revised AD 9.6 Effective 4/30/2021. Almost every section has subsections, and multiple sub-subsections within those subsections. *Id*. The Court finds that the following sections are to this case: 6. Administrative Remedies Procedures, and 7. Appeals of Administrative Decisions; and will include them, in relevant part, below.

5. General Provisions. The following provisions shall apply to all administrative remedies:

    A. Notice.

        1. Administrative Directive 9.6, Inmate Administrative Remedies, shall be published in English and Spanish. Each inmate, direct contact employee (to include any direct contact contractor) shall be issued a written summary of Administrative Directive 9.6, Inmate Administrative Remedies, upon initial contact with the Department. An inmate whose primary language is Spanish shall receive a copy translated into Spanish. Appropriate provision shall be made for those who do not read, speak or understand English or Spanish. Inmates who are impaired or disabled shall receive assistance as necessary.

        2. English and Spanish copies of Administrative Directive 9.6, Inmate Administrative Remedies, shall be available in each library and shall be available to an inmate upon request.

        3. During orientation, each inmate shall receive verbal instruction on Administrative Directive 9.6, Inmate Administrative Remedies, the subject matters that each pertains to, the forms used for filing, and the provisions for filing. This instruction shall encourage questions and take place as part of the orientation curriculum, no later than two (2) weeks after admission.

        4. Staff shall receive verbal instruction regarding Administrative Directive 9.6, Inmate Administrative Remedies during orientation training.

    B. Access. Each inmate in the Department's custody shall have access to Administrative Directive 9.6, Inmate Administrative Remedies. Special provisions shall be made to ensure access for the impaired or disabled, illiterate or those with language barriers.

        1. Any inmate who needs assistance in using the Inmate Administrative Remedies Process shall receive assistance upon request.

        2. Access to the Inmate Grievance Procedure shall only be limited as a result of abuse of the Inmate Grievance Procedure in accordance with Section 6(N) of this Directive or failure to comply with the Inmate Grievance Procedure.

    C. Depositories and Collection. All grievances, appeals and property claims shall be submitted by depositing them in a locked box clearly marked as 'Administrative Remedies'. The Unit Administrator shall ensure that an adequate number of collection boxes are accessible within the facility.

    D. Administrative Remedies Coordinator. The Unit Administrator shall appoint two employees of the facility to be Administrative Remedies Coordinators, one as the primary coordinator and the other to serve as the secondary coordinator. The Unit Administrator shall arrange for the

training of each Administrative Remedies Coordinator. The Administrative Remedies Coordinator shall:

    1. ensure that notice and instruction regarding the Inmate Administrative Remedies Process is provided to each inmate during orientation;

    2. ensure that current administrative remedy forms are available in all housing units;

    3. ensure that the current Administrative Directive 9.6, Inmate Administrative Remedies, is available in the library and to any inmate who requests it;

    4. ensure that collection of administrative remedy forms is conducted each business day;

    . . .

E. Administrative Remedy Filing. A request for an administrative remedy must be filed in accordance with the following provisions:

    1. A request for an administrative remedy must be filed, in writing, on CN 9602, Inmate Administrative Remedy Form.

    2. Each request for an administrative remedy must be submitted on a separate CN 9602, Inmate Administrative Remedy Form, or CN 9609, Lost/Damaged Property Investigation Form, as appropriate.

    3. The request for an administrative remedy and the action sought should be stated simply and coherently.

    4. The length of the request for an administrative remedy shall be restricted to the space available on the face of the CN 9602, Inmate Administrative Remedy Form and one (1) additional 8 1/2 x 11 inch page.

    5. The request for an administrative remedy must be free of obscene or vulgar language or content.

    6. The request for an administrative remedy must be filed by an inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.

    7. A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

    . . .

6. Inmate Grievance Procedure. The Inmate Grievance Procedure shall be the administrative remedy for any issue relating to policy and procedure, and compliance with established provisions.

A. Informal Resolution. An inmate must attempt to seek informal resolution prior to filing an inmate grievance. The inmate may attempt to resolve the issue verbally with the appropriate staff member or with a supervisor/manager. If the verbal option does not resolve the issue, the inmate shall submit a written request via CN 9601, Inmate Request Form. The inmate must clearly state the problem and the action requested to

remedy the issue. The request must be free of obscene or vulgar language or content. The completed CN 9601, Inmate Request Form shall then be addressed to the appropriate staff member and deposited in the appropriate collection box. The Unit Administrator shall ensure that inmate request forms are collected and delivered in a timely manner. Inmate request forms shall be available in all housing units. A response to the inmate shall be made within 15 business days from receipt of the written request. The Unit Administrator shall post in each housing unit a list of staff members to whom inmate requests should be addressed to for each of the grievable subjects.

B. Grievable Matters. All matters subject to the Commissioner's authority for which another remedy is not provided are grievable. Refer to Section 4 of this Directive for a list of administrative remedies other than the Inmate Grievance Procedure.

C. Filing a Grievance. An inmate may file a grievance if the inmate is not satisfied with the informal resolution offered. The inmate shall attach CN 9601, Inmate Request Form, containing the appropriate staff member's response, to the CN 9602, Inmate Administrative Remedy Form. If the inmate was unable to obtain a blank CN 9601, Inmate Request Form, or did not receive a timely response to the inmate request, or for a similar valid reason, the inmate shall include an explanation indicating why CN 9601, Inmate Request Form, is not attached. The completed CN 9602, Inmate Administrative Remedy Form, along with any relevant documents, shall be deposited in the Administrative Remedies box. The grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance.

D. Disposition and Remedy. Each inmate grievance shall be reviewed, investigated and decided with the outcome indicated by one of the following dispositions: Rejected, Denied, Compromised, Upheld or Withdrawn. Each disposition shall be documented on CN 9602, Inmate Administrative Remedy Form and, when applicable, CN 9604, Inmate Grievance Appeal Form - Levels 2/3. Grievances that are upheld shall be given an appropriate and meaningful remedy. Such remedies may include, but not be limited to:

      1. corrective action to rectify the matter being grieved;
      2. changes in written policies and procedures or in their interpretation or application;
      3. enforcement of existing policies and procedures; or,
      4. development of policies and procedures pertaining to the grievance.

E. Grievance Returned Without Disposition. A grievance may be returned without disposition to the inmate for failure to:

      1. attempt informal resolution;
      2. adequately explain why a response to CN 9601, Inmate Request Form, is not attached; or,

    3. comply with the provisions of Section 5(E)(1-5) of this Directive.

    Returned without disposition signifies that the grievance has not been properly filed and may be re-filed after the inmate has corrected the error. CN 9606, Grievance Returned Without Disposition shall be attached to all grievances returned without disposition to indicate the reason for the return.

F. Rejection of Grievances. Any grievance which does not meet the criteria specified in Sections 5(E)(6 and 7) and 6(A through C) of this Directive may be rejected.

G. Grievance Appeals. A grievance that is denied or rejected may be appealed to the next level as provided for in Sections 6(K) and 6(L) of this Directive. A grievance returned without disposition due to a failure to comply with the procedural requirements of Sections 5(E)(1-5) and 6(D) of this Directive may not be appealed.

H. Appropriate Review. A grievance about a matter that is beyond the authority of lower level(s) of review may be sent by the lower level reviewer directly to the appropriate level of review. In such case the time limit(s) of the lower level(s) shall be combined with the time limit of the appropriate review level and the grievant shall be notified of the review process and of the time frame for response. If the grievance is upheld, the time necessary to implement the change(s) may exceed the time limit for review.

I. Level 1 Review. The Level 1 decision shall be made by the Unit Administrator. The grievance shall be reviewed for compliance with the Inmate Grievance Procedure and investigated if the grievance is accepted. The response shall be in writing within 30 business days of receipt by the Level 1 Reviewer and shall include a statement of the remedy for a grievance that is upheld or compromised, or of the reason a grievance is denied or rejected. The Level 1 Reviewer shall notify the inmate of the Level 1 disposition and, if necessary, shall include an appeal fo=. If a response to a Level 1 grievance is not received within 30 business days, an inmate may appeal to Level 2.

J. Time Limit Extensions. With notice to the grievant, a reviewer may extend the time limit for a response up to 15 business days using CN 9605, Inmate Grievance Procedure - Notice of Time Extension. A grievant may request a time extension of up to 15 calendar days to file an appeal by sending a written CN 9601, Inmate Request Form, to the Administrative Remedies Coordinator. A request by the grievant may be granted at the discretion of the reviewer to whom the appeal is to be sent.

K. Level 2 Review. An inmate may appeal a Level 1 disposition to Level 2 within five (5) calendar days of receipt of the decision. The Level 2 review shall be made in accordance with the following:

    1. A grievance appeal filed by an inmate confined in a Connecticut correctional facility shall be decided by the appropriate District Administrator.

2. A grievance appeal filed by an inmate housed out of state shall be decided by the Director of Sentence Calculation and Interstate Management (SCIM)

3. A grievance appeal filed by an inmate supervised in the community shall be decided by the Director of Parole and Community Services.

The Level 2 response shall be in writing within 30 business days of receipt by the Level 2 Reviewer and shall include a statement of the remedy for a grievance, which is upheld or compromised, or of the reason a grievance is denied or rejected. Level 2 shall be the final level of appeal for all grievances except as provided in Section 6(L) of this Directive.

L. Level 3 Review. An inmate may appeal a Level 2 disposition to Level 3 within five (5) calendar days of receipt of the disposition when such review is restricted to a grievance that:

1. challenges Department level policy;

2. challenges the integrity of the grievance procedure; or,

3. Exceeds the established 30 business day time limit for a Level 2 grievance response.

The Level 3 review shall be made by the Commissioner or designee. The response shall be in writing within 30 business days of receipt by the Level 3 Reviewer.[4]

. . .

10. Appeal of a Disciplinary Action. A guilty finding received at a disciplinary hearing may be appealed by completing and depositing CN 9602, Inmate Administrative Remedy Form, in the Administrative Remedies box within 15 calendar days of the notice of decision. Form CN 9602, Inmate Administrative Remedy Form shall be reviewed by the District Administrator of the district where the disciplinary report was adjudicated. The District Administrator shall respond to any appeal within 15 business days of the receipt. The District Administrator shall not delegate the authority to respond to any disciplinary appeal. Disciplinary action resulting from a guilty plea shall not be subject to an appeal.

The District Administrator may alter disciplinary action in any way that best serves the correctional objectives of the State of Connecticut. The decision of the District Administrator shall not be subject to further appeal.

Any disciplinary sanction/penalty given to an inmate as a result of a guilty finding that is subsequently overturned on appeal shall not be imposed, only to the extent it has not yet been served or completed.[5]

---

[4] The revised directive now organizes the directive differently, with section 6 being Administrative Remedies Procedures. Revised AD 9.6 Effective 4/30/2021 at 6–8.

[5] AD 9.6 Effective 8/15/2013–4/30/2021 at 1–11. The revised directive now organizes the directive differently, with section 10 being Appeals of Administrative Decisions, with nine (9) types of matters that are subject to the departmental appeal procedure, including appeals of disciplinary action decisions. Revised AD 9.6 Effective 4/30/2021 at 6–8.

### C. The Applicability of the PRLA's Exhaustion Requirements to Mr. Wine's Claim

Having discussed the various legal principles at issue, as well as the specific administrative policy to be considered, the Court now turns to the issue of whether Mr. Wine exhausted his administrative remedies here.

#### 1. *The Parties' Arguments*

Defendants argue that Mr. Wine failed to exhaust his administrative remedies, Def. Mem. at 1, ECF No. 210 (Dec. 22, 2023), and that they have met their burden to prove that specific administrative remedies were available to Mr. Wine that he needed to exhaust but he "did not avail himself of those procedures." *Id.*

More specifically, Defendants argue that proper procedural exhaustion is required, not just notice. Exhaustion must properly conform to the procedures established by the DOC, and any such compliance must be exactly as required. Reply at 1–2 ("informal efforts to put prison officials on notice of inmate concerns, such as inmate requests or letters, do not satisfy the exhaustion requirement"). *See Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) ("failing to take all procedural steps, or taking them out of order will also fail to satisfy the exhaustion requirement"); *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("grievances must now be fully pursued prior to filing a complaint in federal court"). "[E]ven if the appeal paperwork had provided prison officials with notice of the Plaintiff's failure to protect claim, it is well established that informal or procedurally improper notice is insufficient to exhaust a claim." Def. Mem. at 29 (citing *Macias*, 495 F.3d at 43 ("to satisfy the PLRA a prisoner must also procedurally exhaust his available administrative remedies")).

Defendants argue that under AD 9.6(6) Mr. Wine had thirty (30) days from the incident on June 10, 2015, to file a CN9601 form, and by failing to do so he failed to properly exhaust.

25

Def. Mem. at 26; Reply at 8. Defendants claim that even assuming that Mr. Wine was free to exhaust his failure to protect claim by raising it within his disciplinary appeal, actual notice was still not provided. Reply at 4. They argue that Mr. Wine's disciplinary appeal did not hint at a failure to protect complaint. Def. Mem. at 28 ("There is no language in the appeal that expressly states any DOC employees failed to protect him from the other inmate involved in the purported fight. There is no language in the appeal that could be construed as even suggesting that the Defendants failed to protect the Plaintiff from a known or knowable threat of assault (and not a fight).").

Defendants also argue that for exhaustion purposes, "it does not matter whether the Plaintiff, in fact, verbally told the Defendants of a risk to his safety. It only matters that he reported the Defendants alleged misconduct properly through the grievance process; and that he conveyed it substantively and procedurally in the manner required by the DOC's available administrative remedies." Def. Mem. at 8. ("The problem for the Plaintiff is that he never reported the Defendants' alleged misconduct to anyone, using the proper administrative remedies."). Defendants argue that the undisputed facts from the hearing show that Mr. Wine did not "file any CN 9601 forms seeking an informal resolution in connection with perceived staff misconduct in ignoring his safety concerns and he did not file any CN 9602 inmate grievances in accordance with AD 9.6(6) either." *Id.* at 9.

Defendants further argue that Mr. Wine failed to exhaust his administrative remedies because he was required to do so under AD 9.6(6) only and to exhaust under any sub-section of AD 9.6 that was not AD 9.6(6) "inappropriate[ly] judicially authorize[s] inmates to choose which administrative remedy procedures to employ when seeking to advance an Inmate Grievance." *Id.* at 25. Defendants argue that Mr. Wine could only exhaust under AD 9.6(6), the

remedies outlined in AD 9.6(6) were available to him, and he did not properly exhaust under AD 9.6(6). *Id.* at 18–19. Defendants argue that evidence presented at the hearing is sufficient to establish all these points, and the only possible conclusion to reach is that Mr. Wine's claim must be foreclosed because of a failure to exhaust. *Id.*

In Defendants' view, Mr. Wine's argument to the contrary, that he exhausted under Administrative Directive 9.5 ("AD 9.5"), "doesn't hold water" because AD 9.5 does not contain administrative remedy procedures; rather it instructs inmates to "file an appeal regarding a disciplinary action in accordance with Administrative Directive 9.6, Inmate Administrative Remedies." *Id.* at 19. Defendants argue that AD 9.6 (which is provided verbatim, in relevant part, above) clearly directs inmates on the required exhaustion procedure:

> [AD 9.6] identifies approximately a dozen administrative remedies that are available to inmates. They are all listed in subsection 4 of Section 6. Each remedy is clearly marked with a description of what it applies to and further directs the inmate to the subsection within AD 9.6 which contains the relevant procedures that the inmate should follow in order to properly use the administrative remedy. For those issues that do not have a specifically enumerated remedy, inmates are instructed to follow the Inmate Grievance Procedure outlined in Subsection 6. The language of Section 6 affirms that it is the remedy for those complaints that do not correspond with specifically enumerated administrative remedies. Because AD 9.6 is the DOC's directive that outlines the administrative remedies available to Connecticut inmates, AD 9.6 contains the procedures that the Plaintiff was required to exhaust.

*Id.* at 20–21 (citations omitted). Defendants further argue that because Mr. Wine's complaint involved alleged misconduct by custody officials and a constitutional failure to protect claim, he was required to follow the procedures outlined in AD 9.6(6), Inmate Grievance Procedure. *Id.* at 21. This section 9.6(6) required that Mr. Wine commence the grievance process through informal resolution. *Id.*

Defendants then argue that Mr. Wine did not exhaust and could not exhaust a deliberate indifference claim under Section 10 of AD 9.6 (Appeal of a Disciplinary Action) because "the correctional authorities define the boundaries of proper exhaustion" and "disciplinary appeals and inmate grievances are different administrative remedies and serve substantive and procedurally distinct purposes within the DOC." *Id.* at 23–26. Defendants also argue that the procedures outlined in AD 9.6(6) and 9.6(10) are "meaningfully different" and it would be inappropriate if inmates were allowed to "choose which administrative remedy procedures to employ" because the two administrative remedies require "different procedural steps and serve different substantive functions within the prison hierarchy, [and] they are not interchangeable for the purpose of *proper* exhaustion." *Id.* at 25–27 (emphasis in original).

Defendants thus argue that "allegations of staff misconduct, not directly arising from a disciplinary hearing, cannot be exhausted as part of a disciplinary appeal challenging prison due process, but must be grieved separately." Def. Mem. at 24. According to Defendants, Mr. Wine could not substitute the required administrative remedy outlined in Subsection 6 with a different administrative remedy outlined in Section 10. *See Id.* at 25–27 (citations omitted).

In Defendants' view, "[e]ven if the Plaintiff had been in a position to choose which remedy to employ in order to exhaust his failure to protect claim (which is not the law), here the Plaintiff's decision to pursue the procedures outlined in Section 10, rather than Section 6, was inadequate to exhaust." *Id.* at 27. They argue that "even if Subsection O did apply to both Inmate Grievances and Disciplinary Appeals, a failure to protect claim against custody officials is materially different from a due process claim against a disciplinary hearing officer. Therefore, there would have been no risk that the two remedies would have been perceived by DOC officials as pertaining to 'the same issue' and therefore interpreted as prohibited repetitive

filings." *Id.* at 34.

They argue that "a simple review of Subsection O's language, in context, confirms that the filing of a disciplinary appeal and inmate grievance at the same time is not only permissible, but it is required when an inmate has both a complaint about his disciplinary hearing and a complaint about custody officials – even if there is some relationship between the two problems. This is not only because there are separately designated administrative remedies for each problem (Section 6 = custody complaints; Section 10 = disciplinary appeals)." *Id.* at 35.

Defendants also argue that "proper exhaustion includes sharing with prison authorities the factual basis for the inmate's complaint." *Id.* at 27. Defendants contend that because no language expressly states any DOC employees failed to protect him from the other inmate, "no language in the appeal that could be construed as even suggesting that the Defendants failed to protect the Plaintiff from a known or knowable threat of assault (and not a fight)." *Id.* at 28. As Mr. Wine's appeal paperwork did not provide notice of a failure to protect claim, Defendants argue "it cannot, under any theory, serve as appropriate exhaustion for the claim pled in the Plaintiff's federal lawsuit." *Id.*

Defendants then argue that their administrative procedures were not opaque. Reply at 6. They point to evidence that Mr. Wine successfully exhaust his procedural due process claim as "evidence that A.D. 9.6 was knowable" and argue that the fact "[t]hat DOC checked the 'You have exhausted DOC's administrative remedies' box at the bottom of his disciplinary appeal is not evidence of a confusing process either." *Id.* at 6–7. They argue that Mr. Wine's claim that he believed filing under both AD 9.6(6) and AD 9.6(10) would have been deemed a prohibited repetitive grievance is "meritless." *Id.* at 6.

Defendants also further argue that the available administrative remedies were not a dead

end. Def. Mem. at 33 ("Both subsections 9.6(4)(A) and 9.6(6)(B) advise that '[a]ll matters . . . for which another remedy is not provided [in Section 4] are grievable 'through the Inmate Grievance Procedure outlined in Section 6. The language of these two sections individually, and collectively, advise that the Inmate Grievance Procedure is one form of remedy, whereas the administrative appeals separately identified in Section 4, constitute other administrative remedies."). They argue that "Subsection O does not pertain to disciplinary appeals or any other administrative appeal that is governed by a different section of AD 9.6. Had the DOC intended to apply Subsection O to all of the administrative remedies contained in AD 9.6, it would have included Subsection O's language in Section 5 of the Directive which is titled 'General Provisions[.]'" *Id.* at 34.

Finally, Defendants argue that Mr. Wine was not thwarted from exhausting administrative remedies. *Id.* at 36. They argue that the deadline to file a grievance under AD 9.6(6) was July 10, 2015, so "it was impossible for the Plaintiff to have been misled" by his returned 9602 form denying his disciplinary appeal [and] the box at the bottom of the form [that] was checked indicating: 'You have exhausted DOC's administrative remedies'" because he received it on August 5, 2015. *Id.* at 37.

In response, Mr. Wine argues that he "pursued the administrative process to conclusion and exhausted his administrative remedies as contemplated by the prison administrative process and as required by the Prison Litigation Reform Act." Pl. Brief at 4. He argues that AD 9.5 directed him to "file an appeal regarding a disciplinary action in accordance with Administrative Directive 9.6, Inmate Administrative Remedies." *Id.* at 6. AD 9.6 initially states that its purpose is "to provide an inmate with the means to seek formal review of an issues relating to any aspect of an inmate's confinement." *Id.* at 4 (international quotation marks omitted). Mr. Wine argues

that his appeal of his disciplinary ticket "embraced and included" his failure to protect claim, which is an issue relating to his confinement as defined by AD 9.6. *Id.* at 4–5.

Mr. Wine argues that he did exhaust his administrative remedies by filing an appeal of his disciplinary ticket, but he does not contest that he did not file a CN9601 under 9.6(6). Pl. Brief at 2–5.

Mr. Wine maintains that he told Defendants Diaz, Drolet, and Black of the threat on June 5, 2015, he was assaulted on June 10, 2015, a disciplinary hearing was held on July 1, 2015, the entire incident was presented at the hearing and Mr. Wine was found guilty of fighting, and he properly and timely appealed this fighting. *Id.* at 6. Mr. Wine argues that as he was in this appeal process already, he was expressly prohibited from filing another separate grievance by AD 9.6 itself, which states that a "repetitive request for administrative remedy may not be filed by the same inmate when a . . . the initial request for an administrative remedy is still process." *Id.* at 6. He argues that it would make no sense for him to file another repetitive grievance.

> The plaintiff's appeal of the disciplinary action for fighting embraced and included the defendants' failure to protect claim. That issue had been litigated and the plaintiff's appeal was still in process when the defendants' claim that the plaintiff should have filed a separate grievance related to the defendants' failure to protect him. It would make no sense for the plaintiff to file a separate appeal related to the defendants' failure to protect after he had been assaulted and when the facts and circumstances of the failure to protect and related assault were already the subject of an appeal. In addition, such an appeal would constitute an improper repetitive appeal. It would subject the plaintiff to sanctions for "abuse" of the grievance procedure. Administrative Directive (A.D.) no. 9.6 para. 6, section O subsection 2 defines "abuse" to include "repetitive grievances addressing the same issue when the established time for response has not elapsed."

*Id.* at 6–7. Mr. Wine is not arguing that he pursued informal procedures but that he exhausted administrative remedies, and this was confirmed in writing by the Defendants. After Mr. Wine

appealed the guilty finding, he received an Inmate Administrative Remedy Form stating that his appeal was denied and directing him to "see attached disposition letter." The disposition letter, dated August 5, 2015, and signed by Angel Quiros, the District Administrator stated that "(t)he Hearing Officer's finding was reasonable. . . . Documentation submitted to the presiding Hearing Officer substantiates that you (the plaintiff) were in a physical altercation with another inmate and the officer on duty observed punches being exchanged." The Administrative Remedy Form specifically stated: "You have exhausted DOC's Administrative Remedies." *Id.* at 3 (quotation mark omitted).

In the alternative, Mr. Wine argues that he is excused from exhausting administrative remedies because the procedure in his particular circumstances were confusing, *id.* at 8 (citing *Ross*, 578 U.S. at 640), and he was hospitalized and in a segregation unit following the assault and was not allowed to contact his attorney or seek advice from counsel as to next steps which made the procedures operate as a dead end because the prison official were unable or unwilling to provide any relief, regardless of what the regulations provided. *Id.* at 9 (citing *Ross* at 643).

Mr. Wine argues that he should be excused from the exhaustion requirement because the procedure in this particular instance was confusing and opaque, and he had raised the issue of the defendants' failure to protect in the disciplinary hearing and appeal. Pl. Brief at 8 (citing *Ross*, 578 U.S. at 640). He argues that the finding from the disciplinary hearing and subsequent appeal that he had been fighting "indicates that the facts and circumstances of the threat, assault, and the plaintiff's role in the altercation had been considered and adjudicated. The notion that the plaintiff would have to file a separate appeal concerning the defendants failure to protect while those very issues were being litigated is confusing and opaque." *Id.*

Furthermore, when his appeal was denied, the DOC "specifically acknowledged that the plaintiff had exhausted administrative remedies." *Id.* Mr. Wine also argues that exhaustion should be excused because he was hospitalized and secluded in the segregation unit after the assault, during which time he was prevented from contacting his attorney to seek counsel on next steps. *Id.* at 9. He argues that the procedures effectively operated as a dead end, as prison officials were unable or unwilling to provide any relief, regardless of what regulation or guidance materials may promise. *Id.*

In their reply, Defendants cite cases in support of their position that Mr. Wine failed to exhaust his failure to protect claim because he did not follow the established procedures. Def. Reply at 3.

### 2.  *The Issues of Exhaustion and the Unavailability of Administrative Remedies*

The Court ultimately agrees with Mr. Wine and finds that, in this specific case, "the grievance procedures that were technically available to [him] are so opaque and confusing that they were 'practically speaking, incapable of use.'" *Williams*, 829 F.3d at 126 (quoting *Ross*, 578 U.S. at 642).

As a preliminary matter, Mr. Wine did not properly exhaust under AD 9.6. Based on the evidence presented at the hearing, Mr. Wine never filed a CN9601 grievance form for his failure to protect claim, and thus, he failed to administratively exhaust this claim. *See Gomez v. Dep't of Correction*, No. 3:20-CV-958 (JAM), 2022 WL 788261, at *4 (D. Conn. Mar. 15, 2022) ("Although AD 9.6 provides that a prisoner may initiate the grievance process with a verbal complaint, it also provides that the prisoner 'shall submit a written request via CN 9601, Inmate Request Form' in the event that 'the verbal option does not resolve the issue.' Because he did not continue to pursue his verbal complaints with written grievances according to the DOC's

grievance procedure, Gómez's verbal complaints alone were insufficient to exhaust his administrative remedies."); *see also Cicio v. Wenderlich*, 714 F. App'x 96, 98 (2d Cir. 2018) ("the plain language of the PLRA forecloses his claim that he did not need to exhaust administrative remedies before bringing an action [alleging failure to protect] under Section 1983"); *Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) ("Because Girard filed his initial complaint in this action before the [Central Office Review Committee] had either decided his appeal or the thirty-day period to respond had elapsed, he failed to exhaust his remedies as to this grievance.").

Mr. Wine allegedly did tell Officers Drolet and Diaz verbally about his fear of being attacked by Mr. Krawczynski, but he did not file a written Inmate Request Form, when this verbal complaint did not solve the issue or prevent the attack. Mr. Wine allegedly told Defendants about physical threats to his safety by Inmate Krawczynski on June 5, 2015, Pl. Brief at 1, and between June 5 and June 10, 2015, Defendants allegedly did nothing. *Id.* By June 10, 2025, when Mr. Wine was assaulted, the relief that he was seeking—protection from being attacked by Inmate Krawczynski—was futile and no longer possible to obtain.

But this futility does not excuse Mr. Wine from the exhaustion requirement because, based on the evidence presented at the hearing, AD 9.6 was still technically available. *See Williams*, 829 F.3d at 123 ("[T]here are no limits on an inmate's obligation to exhaust – irrespective of any special circumstances." (citations and internal marks omitted)). As a result, the administrative remedies detailed in AD 9.6(6) were "officially on the books," *Ross*, 578 U.S. at 643, and were available, at least nominally, to Mr. Wine, and Mr. Wine failed to exhaust properly under AD 9.6(6).

But, as the Supreme Court in *Ross* made clear, as to any of these administrative

processes, this Court still must determine whether "no ordinary prisoner can make sense of what it demands – then it is also unavailable." *Id.* at 644. The Supreme Court also expressed concern for "prison administrators thwart[ing] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. To assist lower courts in making these assessments, the Supreme Court posed a series of hypothetical questions applicable to that case, and thus to this one as well: "were those procedures knowable by an ordinary prisoner in [the inmate's] situation, or was the system so confusing that no inmate could make use of it?" *id.* at 648; and "is there persuasive evidence that Maryland officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, either on a system-wide basis or in the individual case?" *Id.*

Consistent with *Ross* and subsequent Second Circuit and district court decisions, and based on the record here, which includes the testimony and documents entered into the record from the evidentiary hearing–under these specific circumstances–there was a sufficiently confusing process such that, despite Mr. Wine's various efforts to understand his options, he could not fairly avail himself of them. *Cf. id.* ("If the court accepts [the inmate's] probable arguments on one or more of these scores, then it should find (consistent this time with the PLRA) that his suit may proceed even though he did not file [the appropriate grievance form]"); *Rucker v. Gifen*i, 997 F.3d 88, 93 (2d Cir. 2021) ("We therefore hold that administrative remedies are 'unavailable' when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief."); *Williams*, 829 F.3d at 126 ("[T]he regulations plainly do not describe a mechanism for appealing a grievance that was never filed. Moreover, the purported options for relief provided

by defendants, to the extent they are even available to an inmate in Williams's situation, only increase confusion regarding the avenues available to pursue an appeal.").

DOC's own procedures at the time created confusion as to whether a different grievance filed over any failure to protect claim against DOC officials, distinct from an appeal of his discipline for fighting–which may have resulted from the failure of DOC officials to protect him from that alleged fight–was appropriate. Indeed, under the DOC's own procedures, "[a] request for an administrative remedy must be filed in accordance with the following provisions," AD 9.6 Effective 8/15/2013–4/30/2021 at 4, and one of those specified provisions state that "[a] repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstance that would affect the response; or when the initial request for an administrative remedy is still in process." *Id*. An inmate who files such grievances nonetheless may be considered to have filed "harassing grievances." *See* Tr. 43:22–44:7 ("[U]nder O, subsection 3, it says 'An inmate files repetitive grievances when a valid response has been provided and there has been no change in any circumstances that would affect a response; or, an inmate files harassing grievances.' Oh, and No. 2, 'An inmate files repetitive grievances addressing the same issue when the established time for response has not elapsed.'").

Thus, to comply with all of the DOC's applicable administrative procedures, Mr. Wine had to decipher—while hospitalized and needing treatment for a shattered jaw and other injuries, *see* Pl. Brief at 2, and then further segregated for a significant period of time—whether his already pending appeal of his discipline sufficiently addressed his concerns about the failure of specific DC officials to protect him, or whether another subsequent one on this seemingly related issue would be considered a "harassing grievance." During this same time period, DOC staff

repeatedly denied his requests to contact his counsel about what he needed to do. *See* Tr. 46:12-19 ("Q. [W]ere you able to talk to your lawyer during the period of time that this occurred with regard to whether you had properly filed anything? A. No. And you had showed that in the exhibits that for whatever reason they would not allow me contact with my lawyer. I wasn't allowed to send outside letters, and my pin number to my phone had been shut off."). While the DOC presented testimony at the hearing about the presence of grievance forms in the infirmary, there is no evidence in this record that anyone pointed out to Mr. Wine the location of these forms, much less their significance. *See* Tr. 167:12-17 ("Q. Okay. And do you know if anyone at MacDougall-Walker infirmary in June of 2015 pointed out to Mr. Wine where any forms were that he would need to fill out in connection with any grievance or appeal? A. I have no knowledge of that.").

Defendants rightly point out that Mr. Wine had no right to contact an attorney. But this refusal—and his segregation until after it was too late to file the proper grievance form—if it does not make the procedure, in this limited instance, "prohibitively opaque," arguably—if not, in reality—suggests that the administrative procedures for Mr. Wine to file the proper grievance form had been "thwarted" by DOC officials. *See Ross*, 578 U.S. at 648 ("And finally, is there persuasive evidence that Maryland officials thwarted the effective invocation of the administrative process through threats, game-laying, or misrepresentations, either on a system-wide basis or in the individual case?"); *see also Scott*, 434 F. Supp. 3d at 197 ("And plaintiff alleges he repeatedly requested assistance writing a grievance but was either ignored or told someone would help him, and no one provided that help. Those allegations plausibly suggest prison administrators thwarted plaintiff from taking advantage of the grievance system.").

Moreover, in response to the appeal of his discipline for allegedly fighting, DOC officials

told Mr. Wine: "You have exhausted DOC's administrative remedies." Tr. 38:13-23, 200:24–202:23, leaving him with the impression that there was nothing further for him to do. *See Myers v. Semple*, No. 3:18-CV-505 (KAD), 2019 WL 5328692, at *7 (D. Conn. Oct. 21, 2019) ("The court further observes that on Quiros' rejection of the appeal, he indicates to Myers 'You have exhausted DOC's Administrative Remedies.' The Defendants' after the fact re-characterization of these events is rejected."); *Braham v. Perelmuter*, No. 3:15-CV-1094 (JCH), 2017 WL 3222532, at *10 (D. Conn. July 28, 2017) ("the Health Services Review Coordinator checked off the box indicating that Braham had exhausted his remedies, which likely suggested to Braham that he need not take any further steps to appeal or resubmit his grievance") (citation omitted). As another court in this Circuit recently put it aptly: "If the absence of guidance in a grievance procedure can lead to an administrative scheme's being 'prohibitively opaque,' then surely contradictory instructions in a grievance procedure can also lead to an administrative scheme's being prohibitively opaque." *Sease v. Frenis*, No. 3:17-CV-770 (SRU), 2021 WL 260398, at *9 (D. Conn. Jan. 25, 2021) (citing *Williams*, 829 F.3d at 124–27). That is the case here.

In short, Mr. Wine did not elect to forgo his administrative remedies; instead, while he was being treated for significant physical injuries in a location without absolute clarity about his rights and how to assert them, and without being able to consult with his lawyer, he appealed his disciplinary ticket, presumed that this appeal satisfied any and all exhaustion requirements because he received a form explicitly stating that his administrative remedies had been exhausted, and feared that any other filing within the scope of the previous one might risk additional discipline for filing "harassing grievances."

As to Defendants' argument that, if the Court were to find that the exhaustion requirement is either met or excused because Mr. Wine filed an appeal under 9.6(10), then

prisoners would be free to choose which appeal process they wish to follow and they would not follow the proper ones under 9.6(6), it fails for two reasons. First, as the testimony at the evidentiary hearing makes clear, the DOC itself no longer relies on the confusing "You have exhausted DOC's administrative remedies" language provided to Mr. Wine on its forms. Tr. 141:23–142:3 ("Q. I think you said that the document – the box for 'you have exhausted your administrative remedies' is no longer on the form currently? A. Correct. Q. It was, of course, we saw in 2015? A. Yes."). Second, aside from the confusing form language, which the DOC no longer uses, consistent with *Ross*, this decision here rests primarily on the peculiar constellation of circumstances present in Mr. Wine's case, as discussed above. *See Ross*, 578 U.S. at 648 (focusing the inquiry of lower courts on not just systemic issues, but also "procedures knowable by an ordinary prisoner in [the inmate's] situation," and the thwarting of "the effective invocation of the administrative process . . . in the individual case . . . .").[6]

Accordingly, under these particularly circumstances, the administrative remedies available to Mr. Wine were confusing and opaque, and as a matter of law, he is excused from the PLRA's exhaustion requirement.

---

[6] Significantly, cases cited by Defendants in support of their position – and reaching a result different from this Court's here—merely underscore the significance of the individual analysis of the unavailability of administrative remedies undertaken here. *See, e.g., Staton v. Juxon-Smith et.al.*, 3:22-CV-855 (KAD) (April 16, 2024), at *--- ("In sum, Staton's unsupported allegations as to the alleged unavailability of administrative remedies for his claim of excessive force do not overcome Defendants' properly supported motion for summary judgment." (citations omitted)); *Ukanowicz v. Rodriguez*, No. 3:18-CV-1112-(VLB), 2021 WL 2688795 (D. Conn. June 30, 2021), at *9-11 (detailing the various ways in which the process did not result in the administrative remedies being "functionally unavailable to Plaintiff within the PLRA's textual exception to the proper exhaustion requirement." (citations and internal quotation marks omitted)); *Solman v. Corl*, No. 3:15-CV-1610 (JCH), 2018 WL 2337129, at *8 (D. Conn. May 23, 2018) ("The court concludes that the defendants have carried their burden of showing that there is no genuine issue of fact as to whether Solamn exhausted his claim that he was terminated from his position in the upholstery shop in retaliation for pursuing the *Manzi* litigation.").

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss based on failure to exhaust administrative remedies is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 10th day of May, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE